### INDUSTRIAL LIFE INSURANCE COMPANY, Appellant,

v.

### Robert D. FINLEY, Jr., Appellee.

### No. 10.

Court of Civil Appeals of Texas.

Tyler.

Jan. 23, 1964.

Rehearing Denied Feb. 20, 1964.

J. L. Shook, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellant.

Douglas E. Bergman, Dallas, for appellee.

DUNAGAN, Chief Justice.

Robert D. Finley, Jr., as plaintiff, sued Industrial Life Insurance Company, as defendant, for contingent commissions as a life insurance agent under a written contract. Defendant, Industrial Life Insurance Company, answered pleading accord and satisfaction, compromise and settlement and release as well as that no commissions were due under the provisions of the contract after it was terminated no premiums being received by Industrial during any six month's period following termination.

Both plaintiff, Finley, and defendant, Industrial Life Insurance Company, filed motions for summary judgment. The 68th District Court sustained plaintiff's motion for summary judgment and entered summary judgment for the plaintiff, Robert D. Finley, Jr. The court denied defendant's motion for summary judgment.

The defendant, Industrial Life Insurance Company (appellant in this court), has appealed from the court's judgment sustaining plaintiff's motion (appellee in this court) for summary judgment.

Industrial Life Insurance Company of Dallas, Texas, entered into an agency agreement with Robert D. Finley, Jr., dated July 9, 1958, appointing Finley as its agent and representative for the purpose of soliciting insurance on the lives of debtors of financial institutions and dealers located in and near Midland, Texas, on the terms and conditions contained in said agency agreement. That pursuant to the terms of such contract, plaintiff was to receive 50% of the net premiums on life and health and accident insurance written by him, and further was to receive contingent commissions in accordance with the formula set forth in such contract; that on or about the 3rd day of April, 1959, such contract was amended to provide that agent should receive 55% of all premiums written on life insurance in accordance with written amendments to such contract; that on or about the 1st day of August, 1959, said contract was further amended by written amendment providing that plaintiff should receive a guaranteed commission of 55% of all accident and health premiums written pursuant to such contract and making certain changes in the formula for computing contingent commissions reading as follows:

"The contingency provision of the Agency Agreement will be amended to the effect that effective the first month that the net Life and Accident & Health combined premiums equal $1,500.00 per month, the company retention will be lowered to 13% which will become effective at the end of the 12 month period from this date provided the total net premiums for the 12 month period equals $18,000.00.

"The other provisions of this Agency Agreement remain the same."

There would be no useful purpose served by copying herein the full agreement. Only the following portion of the agreement is pertinent to the dispute between the parties as brought forward in this lawsuit.

"The agent will collect credit life and accident and health premiums ac-

cording to company rate charts No. 700 and No. 710.

"The agent will be entitled to receive a flat guaranteed commission of 50% of the net credit life and accident and health premiums collected and reported each month. In addition the agent will be entitled to receive a contingent commission which will be computed according to the following formula at the end of each twelve month period for which premiums are received under this agreement. The total amount of earned premiums, calculated on a monthly pro rata basis, will be determined through IBM computations. Thereafter the following deductions will be made from the calculated earned premiums: 50% of the net written life and accident and health premiums already paid to the agent; 15% of the net written premiums to be deducted for Industrial's retention figure; all losses incurred during the twelve month period. If there is any remaining amount of earned premium, then *all* of the remaining amount will be paid to the agent in the form of a contingent commission.

"It is agreed that in the event the guaranteed commission paid the agent, and the amount of incurred losses during the year are such that Industrial does not receive its retention figure, then the deficit amount will be carried forward to the following year and will serve as a deduction in computing the contingent commission due the agent that year. This deficit formula will continue on a year to year basis until Industrial receives it's 15% retention figure each year. However, in no way will it affect the guaranteed 50% commission paid the agent on a net written premium basis.

"At the request of the agent the company hereby agrees to compute the contingent commission due, if any, according to the above formula every six months that premiums are received under this agency agreement."

The above portion of the contract of course is subject to the amendments thereto as stated above.

Appellee Finley in his original petition alleges that under the terms of such contract defendant was required and obligated to furnish the plaintiff each six months from and after July 9, 1958 a statement in writing showing a computation of the contingent commissions due to plaintiff under the terms of such contract; that defendant furnished to plaintiff such computation as required by said contract through and including the period ending December 31, 1960, but has failed and refused to furnish any accounting or computation of the contingent commissions due to plaintiff under the terms of such contract since such time; that without such computation plaintiff does not have records from which the exact amount of contingent commissions due to plaintiff under the terms of such contract can be computed, but plaintiff, on information and belief, and so believing alleges the facts to be that defendant is indebted to the plaintiff in the sum of $18,000.00 for contingent commissions due under the terms of the contract.

In plaintiff's first supplemental petition, paragraph 4 thereof, he alleges that subsequent to the filing of the original petition he has received from defendant a statement covering all premiums received by defendant on policies written by plaintiff from the inception of the contract, to and including September 30, 1962; that such statement shows that all premiums on policies written by plaintiff have been duly earned as of such date, and after deducting all losses paid and the 15% and 13% retentions, respectively, to be received by defendant under the terms of such contract and the contingent commission paid to plaintiff in the amount of $814.52, there remains due and payable to plaintiff under the terms of such contract the sum of $9,835.62.

Thereafter, Robert D. Finley, Jr., filed his motion for summary judgment and grounds therefor as relied upon as set forth in his original and supplemental petitions, said motion alleging further that the pleadings and exhibits on file show that there is no genuine issue as to any material fact and he is entitled to judgment for full recovery upon such claim against defendant as a matter of law.

Industrial Life Insurance Company filed its answer to said motion for summary judgment. Also, on the same date Industrial Life Insurance Company filed its motion for summary judgment and attached thereto was affidavit of W. C. Hassard, Treasurer and Chief Accounting Officer of Industrial Life Insurance Company, affidavit of James W. Shepard, Vice President of Industrial Life Insurance Company, and letter from R. D. Finley to Mr. Jim Sheppard dated August 16, 1960. Robert D. Finley, Jr., filed his contest and answer to said motion and attached thereto was affidavit of Robert D. Finley, Jr., letter from Carl W. Buttenschon, Agency Supervisor, to R. D. Finley dated July 7, 1961, and letter from R. D. Finley to Mr. Jim Sheppard, Dallas, Texas, dated December 21, 1961. Also, the record before us contains a letter from James W. Sheppard, Vice President, to Mr. R. D. Finley, Jr., dated December 8, 1961.

The Trial Court had before it the pleadings of the parties with all exhibits attached either to the motions and contests for summary judgments or to other pleadings in the case.

In a letter dated August 16, 1960, written by appellee, R. D. Finley, addressed to Mr. Jim Sheppard, Industrial Life Insurance Company, Box 2998, Dallas, Texas, which, in part, reads as follows:

"Dear Jim: This is to confirm our telephone conversation, Monday, August 15, 1960, which I advised you that we were discontinuing writing Industrial Life Insurance coverage on our loans as of August 1, 1960. * * *."

The other portion of his letter states his reasons for such action which we do not believe material to the issues before us.

The following letter was written by James W. Shepard to Mr. R. D. Finley, Jr., dated December 8, 1961, and reads as follows:

"Dear Bob: Reference is made to our recent conversation pertaining to possible contingent commission due to you that may have accrued as a result of the agency agreement that we had with you when you were with the City Finance Company of Midland.

"Our attorneys have examined our entire contingent commission program and have advised us that the wording which is controlled in the contingent commission portion of your original agency agreement which was dated July 9, 1958 covers only contingent commissions earned in 'each 12 month period for which premiums are received under this agreement.' They have advised that, whenever the agency agreement has been cancelled, the earning of any contingent commission ceases on that date. They have advised that your contingent commission should be computed August 1, 1960, since July, 1961 was the last month in which you issued coverage for our company. However, since your agency agreement also provides that the formula be computed for each 6 month period, we furnished to you, on July 7, 1961, a statement of the contingent commission which had accrued to you as of December 31, 1960. In the event you have misplaced your copy of this statement, I am enclosing a photostatic copy of same which reflects that, as of that date, your contingent commission amounted to $814.52.

"Inasmuch as this is the last date that the contingent commission will be computed, I am enclosing herewith our check in the amount of $814.52 which is full and final settlement for the contingent commission due under our contract which you terminated by letter

dated August 16, 1960. In the event you do not have a copy of your letter of termination, I am enclosing herewith a photostatic copy of it, together with a photostatic copy of the contingent commission provision of the agency agreement.

"Bob, I was sorry that we were not able to continue to do business with you since our relationship had always been so pleasant. If, at any time in the future, you re-examine your insurance program, we would like the opportunity of conferring with you about it."

Accompanying said letter was a check dated December 8, 1961, from Industrial Life Insurance Company to Robert D. Finley in the sum of $814.52, with the following notation thereon:

"Received as full payment of all money due as contingent commissions under an agency agreement between Robert D. Finley, Jr. and Industrial Life Insurance Company, dated July 9, 1958." Robert D. Finley accepted, endorsed and cashed such check and such check was paid in full to him in the amount of $814.52.

Appellant pleaded accord and satisfaction, compromise and settlement and release as well as that there were no commissions due under the plain words of the contract, such contract having been voluntarily terminated by Finley and no premiums having been received from R. D. Finley, Jr. after August 1, 1960. Appellee takes the position that a proper construction of the contract involved herein establishes that appellant received premiums from insurance written by appellee through August 1, 1962; that appellee was entitled to contingent commissions on such premiums, which such contingent commissions could not have been calculated until on or after August 1, 1962. That the check in the amount of $814.52 received by appellee and cashed by him as alleged in the pleadings could not as a matter of law constitute accord and satisfaction, a compromise and settlement, or a release of appellant from the payment of contingent commis-sions from and after December 31, 1960, because no commissions were due to appellee under a proper construction of the contract at issue until August 1, 1962, when all the business written by appellee had run off the books, so that the formula set up in the contract for computing contingent commissions could be fully applied.

The appellee further urges that in the event the acceptance and cashing of the check for $814.52 with the notation on the back thereof "Received as full payment of all money due as contingent commissions under an agency agreement between Robert D. Finley, Jr. and Industrial Life Insurance Company, dated July 9, 1958" should be held by the court to amount to an acceptance and satisfaction and compromise and settlement and release and discharge, then and in that event a genuine issue of material fact exists in this cause as to whether appellee accepted and cashed such check with the understanding on his part that it was in payment of contingent commissions that might become due to him from and after December 31, 1960. Appellee alleges in his answer and contest to the motion for summary judgment filed by appellant that at the time of his acceptance of the check delivered with defendant's letter of December 8, 1961, in the amount of $814.52, he accepted such check with the understanding on his part that it was in payment of contingent commissions due to him under the terms of his contract for the period ending December 31, 1960, which was the only amount due at that time; and he in no manner understood the legend on the back of such check to be and constitute a release of any contingent commissions that might become due to him subsequent to December 31, 1960, at such time as computations could be made under the terms of such contract in order to determine whether or not such contingent commissions were due.

Robert D. Finley, Jr., in his affidavit attached to his contest and answer to appellant's motion for summary judgment, states that at the time of his acceptance of Industrial Life Insurance Company check dated

December 8, 1961, payable to him in the amount of $814.52, it was accepted and cashed by him with the understanding on his part that it was in payment of contingent commissions due to him under the terms of his contract with appellant for the period ending December 31, 1960; that the amount of such check was in the exact amount of the computation which had been furnished to him by Industrial Life Insurance Company, showing the contingent commissions earned by him as of December 31, 1960; that he had made demand prior to December 8, 1961 on appellant, both orally and in writing, for payment of the contingent commissions due to him under the contract and on several occasions and had been informed that such sum of $814.52, shown to be due as contingent commissions for the period ending December 31, 1960, would not be paid to him until all the business had run off the books; that it was his understanding that delivery to him of said check was payment of contingent commissions due him as of December 31, 1960, and that he in no manner understood the tender of such check with the legend on the back thereof as being in payment of contingent commissions to accrue to him subsequent to December 31, 1960, under the terms of his contract with the company, as under the contract such commissions could not be computed in accordance with the formula set forth in such contract until such business had run off the books of the company. And further, that at the time of the acceptance of such check there was no contingent commissions due to him under the terms of the contract except for the period ending December 31, 1960. In support of appellee's position that he did not understand his acceptance of the check in any manner affected his claim to continue commissions accruing subsequent to December 31, 1960, he filed as an exhibit his letter to Mr. Jim Sheppard, % Industrial Life Iunsurance Company, Box 2998, Dallas, Texas, dated December 21, 1961, which was some several days after he received his letter and check dated December 8, 1961, which reads as follows:

"Dear Jim, I have been out of town this week and in checking with my wife last night, I find that the Contingent Commission Statement which was to have been in my hands not later than Monday December 18, 1961 had not been received. I will appreciate your sending this statement at once.

"I want to thank you for sending the Statement of Losses. It was about what I had figured except for the Foy account. It looks as if you may be charging me with your attorney *expence*, which I can not be held responsible for this *expence* since it was your election to handle the claim in this manner.

"Jim, please do not feel that my feelings in this is personal. I am simply not going to just give the commissions due me away. I will do what is necessary to see that I receive my full commissions. Very best season's greeting to you and yours."

W. C. Hassard, Treasurer and Chief Accounting Officer of Industrial Life Insurance Company, by and through his affidavit, says that when the check of Industrial Life Insurance Company was issued to Robert D. Finley containing a restriction and limitation by way of such notation on the back of such check that such language was placed on such check by appellant before it was transmitted to Robert D. Finley, Jr. That at the time of the issuance of such check in the sum of $814.52 to Robert D. Finley, there then existed a bona fide dispute, both as to the contingent commission due under the agency contract which had been cancelled by mutual agreement on the 16th day of August, 1961, as of the 1st day of August, 1961; because Industrial Life Insurance Company through its officers and attorneys, were contending that the contract having been cancelled, the earning of contingent commissions ceased on the date of such cancellation or in any event that no contingent commission could accrue subsequent to the

end of the six month period last, during which premiums were received. When the check of December 8, 1961, in the sum of $814.52 in favor of Finley was issued and the letter of appellant to Robert D. Finley, Jr. (December 8, 1961) signed by James W. Shepard, was written, any other or further commissions the subject of any dispute were then completely unliquidated and unknown and unascertainable for the reason that the losses and loss expenses and other charges which might have then been made or might thereafter have been made against the premiums earned were unknown and unascertainable and could not be ascertained and determined until after the losses or expenses were thereafter incurred. He further says the unearned premium against which such losses and loss expenses would have been charged while more certain of ascertaining by virtue of the lapse of time were likewise unliquidated and had not been ascertained, but the unearned premiums only were known and the earned premiums could only be calculated by taking into account the various factors and the lapse of time necessary to correctly ascertain the earned premiums at any given date as against the unearned premiums, and such continued until all of such premiums were earned, which did not occur until the 31st day of December, 1962.

The affidavit of James W. Shepard, Vice President of Industrial Life Insurance Company, is similar to the statement of Mr. Hassard in his affidavit. Mr. Shepard states that Robert D. Finley had been advised of their position, that because of the provision of the agreement and because of its cancellation by mutual agreement that the earning of any contingent commission ceased, both because of the cancellation and because of the provisions of the contract with reference to commissions being payable only for periods for which premiums are received under the agreement; that he intended for Industrial Life Insurance Company both by the language of his letter of December 8, 1961, as well as by the placing of the language on the back of the check of December 8, 1961, to be full payment of any sum to Robert D. Finley, Jr., in connection with the agreement of the matters involved. That Robert D. Finley did not reject said check nor return it but proceeded to cash same after having received his letter of December 8, 1961, which accompanied said check.

We have quoted at length from the affidavits of Hassard, Shepard, and Finley and the pleadings in order to reflect the intentions and understanding as claimed by each.

We first must determine from the record before us whether a material issue of fact exists in this case. The appellee construes the notation on the check of December 8, 1961, in the sum of $814.52, as being in full payment of all contingent commissions due as of December 8, 1961, under the terms of such agency agreement; whereas, appellant takes the position that the notation was in final payment of any and all contingent commissions due or which might become due under the agreement. Appellant says that Finley having terminated the agency agreement in his letter of August 6, 1960, as of August 1, 1960, that said agency agreement did not provide for any future or further commission after the cancellation except those which had occurred prior to the termination by the appellee or those which might accrue during the last six month period that premiums were received under the agency agreement and no premiums were received by appellant from appellee after August 1, 1960. And he further said that should the appellant be mistaken as to this being the proper interpretation of the contract, that by the cashing of said check by Finley in connection with the letter of December 8, 1961, that he released any claim to any future contingent commissions that might be due him under the contract and also that accord and satisfaction and compromise and settlement results from Finley's action.

In the case of McCarty et al. v. Humphrey et al. (Tex.Com.App.) 261 S.W. 1015, the court held that accord and satisfaction,

being dependent upon agreement, only occurs where the parties mutually assent to it. Their intention is a controlling element. In such a transaction there can be no agreement expressed or implied when both parties have no intention to make it, or when one has but the other has not. Citing as authority therefor Gulf, C. & S. F. Railway Co. v. Gordon, 70 Tex. 80, 7 S.W. 695, 697.

Whether or not a transaction constitutes payment in termination of liability depends upon the intention of the parties, and acts which might otherwise constitute payment will not do so when the parties do not so intend. Greenwood v. Senter, Tex. Civ.App., 44 S.W.2d 504, affirmed in part and reversed in part, Tex.Com.App., 61 S.W.2d 812.

In Rowlett v. Superior Ins. Co., Tex.Civ. App., 325 S.W.2d 921 (writ refused n. r. e.), the court said:

"It is also held that payment does not occur unless money passes from the debtor to the creditor for the purpose of extinguishing the debt, and the creditor must receive it for the same purpose."

Citing a number of authorities. In the case of Call of Houston, Inc. v. Mulvey, Tex.Civ.App., 343 S.W.2d 522 (no writ history), the court held:

"It has also been held that the parties must intend and the creditor must fully understand that the amount tendered is conditioned as full settlement."

And the court further said:

"It has also been held that if the creditor is to be held to have surrendered his claim against the debtor, it must be shown that he understood or should have understood that he was doing so when he received the consideration claimed therefor."

We think this case presented a question very similar to the question now before this court for determination.

Bouvier's Law Dictionary (Century Edition) defines the word "due" as:

"What ought to be paid; what may be demanded.

"It differs from owing in this, that sometimes what is owing is not due; a note payable thirty days after date is owing immediately after it is delivered to the payee, but it is not due until the thirty days have elapsed."

In the case of Oden v. Gates, Tex.Com. App., 119 Tex. 76, 24 S.W.2d 381, the word "due" is defined as follows:

"The word 'due' has a double meaning: (1) That the debt or obligation to which it applies has by contract or operation of law become immediately payable; (2) an existing indebtedness without reference to the time of payment, in which it is synonymous with 'owing,' and includes all debts, whether payable in praesenti or in futuro."

The letter from Finley to Sheppard dated December 21, 1961, in which he (Finley) says "I will do what is necessary to see that I receive my full commissions" supports his contention that in cashing and accepting the check of December 8, 1961, in the sum of $814.52, he did not intend to release any future contingent commissions he would be entitled to under the agency agreement.

We think the fact that there was, or might have been, a misunderstanding on the part of appellee as to whether or not the legend on the back of the check was in full payment of all contingent commissions due as of December 8, 1961 only, or whether it was in final payment of any and all contingent commissions due or which might become due under the agency agreement, presented an issue of fact. Also, we believe a question of fact is raised as to what the parties intended by the expression "due", and that it would be a matter of proof of the meaning intended by the term used.

For these reasons, the decision of the Trial Court is reversed, and the case remanded for trial on its merits.