**INDUSTRIAL LIFE INSURANCE COMPANY, Petitioner,**

v.

**Robert D. FINLEY, Jr., Respondent.**

**No. A–10067.**

Supreme Court of Texas.

July 8, 1964.

Rehearing Denied Oct. 7, 1964.

Locke, Purnell, Boren, Laney & Neely and J. L. Shook, Dallas, for petitioner.

Douglas E. Bergman, Dallas, for respondent.

STEAKLEY, Justice.

Petitioner, Industrial Life Insurance Company, defendant below, contracted in writing with Respondent, Robert D. Finley, Jr., plaintiff below, under the terms of which Respondent agreed to solicit life insurance for Petitioner from debtors of financial institutions and dealers located in the Midland area. The contract was dated July 8, 1958, and provided that Respondent would be compensated for his services in two respects: First, he would receive 50 per cent of the net premiums on insurance written by him[1]; and, in addition, he would be paid contingent commissions computed upon the basis of a formula outlined in the contract[1]. The relationship continued until August 1, 1960, as of which date Respondent ceased to write insurance for Petitioner.

Subsequently, Respondent instituted this suit against Petitioner for contingent commissions which he claimed to be due under the contract. Petitioner answered with a plea of accord and satisfaction, compromise and settlement, or release. Both parties filed motions for summary judgment. The trial court granted Respondent's motion and entered judgment for him in the sum of $9,835.62. The Court of Civil Appeals held there were issues of fact to be resolved and reversed the judgment of the trial court and remanded the cause for trial on its merits. 374 S.W.2d 947. We granted the application for writ of error of Petitioner upon its points urging that there was an accord and satisfaction as a matter of law, and that the Court of Civil Appeals erred in holding that there were issues of fact to be tried on the merits. These we sustain.

The sworn pleadings and affidavits of the parties in support of their respective motions for summary judgment, together with their respective answers to the motions for summary judgment, establish the sequence of events. The Agency Agreement between Petitioner and Respondent dated July 9, 1958, contained a termination provision that "Either party hereto shall have the right to terminate this agreement upon thirty days notice in writing of a desire to do so." The contingent commission provision was as follows:

"In addition the agent will be entitled to receive a contingent commission which will be computed according to the following formula at the end of each twelve month period for which premiums are received under this agreement. The total amount of earned premiums, calculated on a monthly pro rata basis, will be determined through IBM computations. Thereafter the following deductions will be made from the calculated earned premiums: 50% of the net written life and accident and health premiums already paid to the agent; 15% of the net written premiums to be deducted for Industrial's retention figure; all losses incurred during the twelve month period. If there is any remaining amount of earned premium, then *all* of the remaining amount will be paid to the agent in the form of a contingent commission.

"It is agreed that in the event the guaranteed commission paid the agent, and the amount of incurred losses during the year are such that Industrial does not receive its rentention figure, then the deficit amount will be carried forward to the following year and will serve as a deduction in computing the contingent commission due the agent that year. This deficit formula will continue on a year to year basis until Industrial receives it's 15% retention

---

[1]. The contract was later amended to increase the percentage on premiums and to effect changes in the formula for computing contingent commissions; the subsequent amendments are not relevant to the problem of the case but are reviewed in the opinion of the Court of Civil Appeals. 374 S.W.2d 947.

figure each year. However, in no way will it affect the guaranteed 50% commission paid the agent on a net written premium basis.[2]

"At the request of the agent the company hereby agrees to compute the contingent commission due, if any, according to the above formula every six months that premiums are received under this agency agreement."

By letter to Petitioner dated August 16, 1960, Respondent confirmed his advice by telephone on August 15, 1960, that he was discontinuing the writing of business for Petitioner as of August 1, 1960.

Under date of July 7, 1961, the Agency Supervisor of Petitioner wrote Respondent as follows:

"Enclosed is your contingent statement of December 31, 1960. You will note that your statement is now in the black in the amount of $814.52. It is my understanding that Mr. Shepard has previously advised you that this money will not be payable to you until the business has run off the books.

"I hope this will give you the information you need and wish you the best of luck down in Austin."

It may be noted at this point that the final and exact amount of contingent commissions which would result from application of the contract formula to the policies written by Respondent for Petitioner could not be known until the business had "run off the books," that is, until the full experience of the policies, and the application of the contract formula to them, could be known. The time element could not exceed thirty-six months from the date of each policy because this was the maximum duration of coverage which Respondent could write under his contract with Petitioner. The final amount did in fact prove to be $9,835.62 (after deducting $814.-52 previously paid Respondent), for which amount the trial court entered judgment for Respondent.

Under date of December 8, 1961, the Vice President of Petitioner wrote Respondent the following letter:

"Reference is made to our recent conversation pertaining to possible contingent commission due to you that may have accrued as a result of the agency agreement that we had with you when you were with the City Finance Company of Midland.

"Our attorneys have examined our entire contingent commission program and have advised us that the wording which is controlled in the contingent commission portion of your original agency agreement which was dated July 9, 1958 covers only contingent commissions earned in 'each 12 month period for which premiums are received under this agreement.' They have advised that, whenever the agency agreement has been cancelled, the earning of any contingent commission ceases on that date. They have advised that your contingent commission should be computed August 1, 1960, since July, 1961 [meaning 1960] was the last month in which you issued coverage for our company. However, since your agency agreement also provides that the formula be computed for each 6 month period, *we furnished to you on July 7, 1961, a statement of the contingent commission which had accrued to you as of December 31, 1960.* In the event you have misplaced your copy of this statement, I am enclosing a photostatic copy of same which reflects that, *as of that date, your contingent commission amounted to $814.52.*

"Inasmuch as this is the last date that the contingent commission will be computed, I am enclosing herewith *our*

2. The agreement was subsequently amended to effect changes in the formula which are not material to the question at hand.

*check in the amount of $184.52 which is full and final settlement for the contingent commission due under our contract which you terminated by letter dated August 16, 1960.* In the event you do not have a copy of your letter of termination, I am enclosing herewith a photostatic copy of it, together with a photostatic copy of the contingent commission provision of the agency agreement." (Italics added.)

The check of Petitioner in the sum of $814.52 transmitted to Respondent by the above letter also carried on its face a notation which read: "Received as full payment of all money due as contingent commission under an Agency Agreement between Robert D. Finley, Jr. and Industrial Life Insurance Company dated July 9, 1958." Respondent cashed the check.

Subsequently, under date of December 21, 1961, Respondent wrote Petitioner's Vice President as follows:

"I have been out of town this week and in checking with my wife last night, I find that the contingent Commission Statement which was to have been in my hands not later than Monday December 18, 1961 had not been received. I will appreciate your sending this statement at once.

"I want to thank you for sending the Statement of Losses. It was about what I had figured except for the Foy account. It looks as if you may be charging me with your attorney expence [sic], which I cannot be held responsible for this expence [sic] since it was your election to handle the claim in this manner.

"Jim, please do not feel that my feelings in this is personal. I am simply not going to just give the commissions due me away. I will do what is necessary to see that I receive my full commissions."

This suit was filed May 10, 1962.

As previously mentioned, the Agency Agreement expressly provided that either party could terminate the contract upon notice in writing to the other. There is, however, no express provision regarding the effect of a termination upon the contingent commission account. The contract is subject to the construction that Respondent's right to contingent commission on all policies he had written for Petitioner was unaffected by his act of discontinuing the writing of further business, the amount of which being determinable by application of the contract formula. This is the theory of Respondent's suit against Petitioner, and no doubt was the basis for the judgment of the trial court granting Respondent's motion for summary judgment.

On the other hand, the contract is subject to other constructions, e. g., that the earning of contingent commissions ceased when Respondent discontinued writing business for Petitioner; or, that Respondent was entitled to the payment of contingent commissions only after the policies he had written for Petitioner had established their full experience under the contract formula; or, that at the end of the last six month period in which Respondent had written policies for Petitioner, Respondent was entitled to contingent commissions in an amount determinable by application of the contract formula at such time. It is apparent that Petitioner through its Agency Supervisor expressed the second view mentioned above in the letter to Respondent dated July 7, 1961; and that Petitioner through its Vice President stated in the letter of December 8, 1961, to Respondent that Petitioner's attorneys had advised that the first view was correct, but that Petitioner was tendering its check in the sum of $814.52 to Respondent upon the basis of a final contingent commission payment to Respondent as of the end of the last six month period in which Petitioner was required to render Respondent a computation under the contract formula.

Respondent in his First Supplemental Petition alleged that it was Petitioner's

"position and so expressed to Plaintiff prior to December 8, 1961, both orally and in writing, that contingent commissions could not and would not be calculated on the premiums received by the Company under the terms of the above-mentioned contract and its amendments until all of the insurance business so written by Plaintiff had run off the books." This allegation corresponds to the position taken by Petitioner in the letter of the Agency Supervisor dated July 7, 1961, previously quoted. In Respondent's affidavit to his answer opposing Petitioner's motion for summary judgment, Respondent stated "that subsequent to the writing of such letter [the letter of July 7, 1961], Mr. James W. Shepard, Vice Presiden of Industrial Life Insurance Company, asserted to me the position of the company, that I was entitled to no contingent commissions under the terms of my contract with such company for the reason that it was their position that the company had not received any premiums subsequent to August 1, 1960." This statement corresponds to the position of the attorneys of Petitioner outlined in the letter of its Vice President dated December 8, 1961, transmitting Petitioner's check in the sum of $814.-52.

Petitioner alleged in its motion for summary judgment, and in the supporting affidavits of its officers, that a bona fide dispute existed between the parties at the time of its tender to Respondent of the check in the sum of $814.52; that Petitioner was contending that the earning of contingent commissions ceased on the day Respondent discontinued writing business for Petitioner under the contract, or that contingent commissions could not accrue subsequent to the end of the last six month period in which Respondent wrote business under the contract and in which premiums were received from Respondent on business he had written.

In the solution of the problem of accord and satisfaction before us we are not required to construe the basic contract of the parties, and we express no opinion thereon. The various possible constructions and the positions of the parties, reviewed above, are relevant only in the establishment of the fact that there existed a bona fide dispute between the parties at the time of Petitioner's letter to Respondent, dated December 8, 1961. This is the letter which transmitted Petitioner's check in the sum of $814.52 with the statement that the check was tendered in "full and final settlement for the contingent commission due under our contract which you terminated by letter dated August 16, 1960"; and with the check bearing the corresponding notation, "Received as full payment of all money due as contingent commission under Agency Agreement between Robert D. Finley, Jr. and Industrial Life Insurance Company dated July 9, 1958."

Much has been written upon the defense of accord and satisfaction. 1 Am. Jur.2d 299, 1 C.J.S. Accord and Satisfaction p. 460, 1 Tex.Jur.2d 206, 4 A.L.R. 474, 34 A.L.R. 1035, 53 A.L.R. 768, 75 A.L.R. 905, 112 A.L.R. 1219, 4 Tex.L.R. 523, 16 Tex. L.R. 101, 17 Tex.L.R. 205. There must be a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted. The defense may be established by part payment of an unliquidated demand; and "[s]ufficient consideration for accord may inhere in or arise out of a dispute as to liability upon a liquidated claim. This presupposes that denial of liability, in whole or in part, is not merely factitious or mala fides." Simms Oil Co. v. American Refining Co., Tex.Comm.App., 288 S.W. 163 (1926), quoted with approval in Ortiz Oil Co. v. Geyer, 138 Tex. 373, 159 S.W.2d 494 (1942). McCarty v. Humphrey, Tex.Comm.App., 261 S.W. 1015 (1924), speaks in terms of the evidence conclusively establishing "an assent of the parties to an agreement that the amount" paid by the debtor to the creditor "was in full satisfaction" of the "entire claim." Simms, supra, says "the minds must meet" and where resting in

implication, "the facts proved" must "irresistibly point" to such conclusion.

In Root & Fehl v. Murray Tool Co., Tex. Comm.App., 26 S.W.2d 189 (1930), the check from the debtor to the creditor was marked in full payment of the account. The jury found that it was not agreed between the parties that the check was in full satisfaction; but the jury also found that the creditor knew the check was marked as a payment in full. The court said:

"We think, in view of the fact that there was no evidence in the record of any express agreement between the parties that the check was to be accepted only as partial payment, the legal effect of the acceptance with the knowledge of the recital on the check that it was tendered in full payment, as a matter of law, operated to sustain plaintiff in error's plea of accord and satisfaction, entitling it to the judgment rendered by the trial court."

This Court in Texas & Pacific Ry. Co. v. Poe, 131 Tex. 337, 115 S.W.2d 591 (1938), held there was no issue of fact where a draft was accepted and cashed by an injured party containing the provision "In full and complete settlement and payment for personal injuries and damages received at Sweetwater, Texas, November 23, 1931." There also appeared on the draft the words "Read before endorsing." To the same effect are the cases of Fennell v. Troel, 226 S.W. 442 (Tex.Civ.App.1920, no writ), in which the check was marked "Paid in full"; Burgamy v. Davis, 313 S.W.2d 365 (Tex. Civ.App.1958, no writ), in which the check notation "Payment of account in full" was marked out before cashing, but such fact was not communicated to the debtor; Robertson v. National Spiritualists' Ass'n., 25 S.W.2d 889 (Tex.Civ.App.1929, writ dism.), in which the check carried the notation "In full of all demands of any character whatsoever against the estate or will of John L. Jackson, deceased, National Spiritualists Association of the United States of America, George B.

Warne, President of said Association, and Ethridge-McCormick and Bromberg, or any of them"; Buford v. Inge Construction Co., 279 S.W. 513 (Tex.Civ.App.1925, no writ), wherein the court held:

"The indorsement on the check certainly was in unequivocal terms, and declared that its acceptance by appellee would constitute a full settlement of the claim. The letter in effect stated that the amount of the check was tendered in full payment of the work done, and further that, if settlement of the account on that basis was not satisfactory, the matter would have to be arbitrated. We can only construe the tender thus made as an unequivocal offer of accord and satisfaction. When appellee received this check and explanatory letter, it was given the choice, either to accept the check as full payment of its debt, or to return same, unaccepted, and hold appellant for its full claim. When appellee's manager chose the former course, and accepted the money represented by the check, he thereby took said money under the sole condition on which it was tendered, unaffected by the mental attitude of its said manager in reference to whether it was accepted as full and complete payment of the debt. Such mental attitude cannot control the effect of the said act. We therefore hold that the undisputed evidence in this case shows that there was a valid accord and satisfaction of this debt, and that same is a bar to the claim asserted by appellee in this suit."

McCarty, supra, held under the facts there considered that the question of whether or not there was an accord and satisfaction presented at most a question of fact as to which the conclusions of the Court of Civil Appeals were final; but in so doing, the court said, by way of parenthesis, "(It is significant and important that this check did not have upon it some such notation as 'in full' or 'in full for all claims.')"

Under the precedents we have reviewed, the conclusion is inescapable that the undisputed facts in the case at bar establish the defense of accord and satisfaction. The notation on Petitioner's check, and the statement of the basis of its tender to Respondent in the transmittal letter, were a clear and unequivocal offer of an accord. The act of Respondent in accepting and cashing the check with knowledge of the recitals on the check and in the transmittal letter was an acceptance. The resulting transaction constitutes an accord and satisfaction. It matters not whether Respondent's claim is considered to be liquidated or unliquidated. If unliquidated, in the sense of the amount being unknown and unascertainable at the time of the transaction, the offer and acceptance of a lesser payment establishes the defense; if liquidated, there is consideration in the dispute between the parties as to the extent of Petitioner's liability to Respondent under their contract.

Respondent urges that there are fact issues in two respects which require a remand of the case. He asserts these to be whether there was a meeting of the minds and whether there was a mistake of fact in the acceptance and cashing of Petitioner's check. He argues that the word "due" employed in the notation on the check was used in the present tense only; that the amount of the check was all that was due and owing Respondent at that time; and that his acceptance and cashing of the check was not with the understanding that it was in settlement of contingent commissions that might later become due under his construction of the contract. Under the decided cases, these contentions of Respondent cannot stand in the face of the language of the transmittal letter and the check notation. "Full and final settlement for the contingent commissions due under our contract which you terminated by letter dated August 16, 1960" can only be construed as imparting knowledge to Respondent that the accompanying check was tendered in full accord and settlement of all the obligations of Petitioner for the payment of contingent commissions. Under the holding in Root & Fehl, the recitals in the letter and in the check operate to sustain the plea of accord and satisfaction in the absence of any evidence of an express agreement that the check was to be accepted only as partial payment. There is no such evidence here. This is also the rationale of the cases in which notations and recitals of similar import have been considered.

The principal cases cited to the contrary are distinguishable. While recognizing the consequences of accepting a check marked "Paid in full," the court in Firestone Tire & Rubber Co. v. White, 274 S.W.2d 452 (Tex.Civ.App.1954, no writ), remanded the cause in the interest of justice because "The record therefore shows that each party was laboring under a mistake of fact,— Firestone as to the amount due and Crow as to the amount of his loss in the partnership venture. That is to say, neither party knew all the material facts at the time Firestone confirmed the balance due by Crow and at the time Crow paid such stated balance. Under such circumstances each party failed to fully develop his evidence on material issues * * *." Similarly, in Call of Houston, Inc. v. Mulvey, 343 S.W.2d 522 (Tex.Civ.App.1961, no writ), the court said:

> "The doctrine under which a debt may be discharged by acceptance of a check in a smaller amount requires that the check be tendered on the condition that its acceptance will be in full satisfaction of the debt. This condition may be expressed or inferred from circumstances and the debtor's conduct clearly indicating that acceptance of the check is to discharge the entire debt. 1 Tex.Jur.2d Accord and Satisfaction, § 34, p. 234. *Here it is not beyond dispute that the check was so tendered."* (Italics added.)

The judgments of the trial court and of the Court of Civil Appeals are reversed, and judgment is here rendered for Petitioner.