TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00308-CV







Kyle Carter and Eric G. Carter, Appellants



v.



Barry Smith, Appellee







FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY


NO. 236,654, HONORABLE CHUCK MILLER, JUDGE PRESIDING







 Kyle Carter and Eric G. Carter appeal from a trial-court judgment recovered by Barry
Smith. We will reverse the judgment in part, rendering judgment on the part reversed, and affirm
the balance of the judgment.


THE CONTROVERSY (1)


 Smith sued the Carters to recover damages for breach of a residential-lease contract
executed by Kyle as a tenant, by Eric as a guarantor, and by Kyle's co-tenant in the rented
premises. The contract declared that Kyle and the co-tenant were jointly and severally liable for
the tenants' lease obligations. While the contract expressly authorized Smith to require that the
monthly rent of $1,200.00 be paid by a single check, throughout the term of the lease Smith
accepted $600.00 checks monthly from each of the two tenants. The term of the lease was from
August 25, 1995, to August 19, 1996, the prorated rent for the last month being specified in the
lease as $735.48. Kyle and his co-tenant entered into possession in August 1995.

 The contract provided that the monthly rent must be paid on or before the first day
of each month "with no grace period"; and, if the rent was not paid before the third day of the
month, Kyle and his co-tenant would be required to pay "an initial late charge of $25.00 plus a
late charge of $5.00 per day until paid in full." Kyle and his co-tenant paid at the beginning of
the term a $1,200.00 security deposit, as required by the contract, each contributing one-half or
$600.00. The contract declared that the two tenants were "prohibited by law from applying [the] 

security deposit to rent." (2) In addition, the contract made the two tenants liable for loss, damage,
or cost of repairs or services caused by them or their guests, damages or repairs beyond reasonable
wear, and unreturned keys, missing or burned-out light bulbs, stickers, scratches, burns, stains,
and unapproved holes.

 According to Smith's testimony, Kyle and his co-tenant were chronically late in
paying the rent throughout most of the lease term; Smith did not, however, complain in that regard
for the first few months. Nearing the end of the lease term, and a few days before July 26, 1996,
Kyle telephoned Smith and asked for a statement of late charges that had accrued because of the
late-rent payments, and inquired whether his half of the security deposit could be applied to his
rent obligation. In response, Smith "faxed" to Kyle on the same day the following message:


Kyle:


Attached is the information you requested per our conversation this morning. The
late fees currently total $360 (assuming this month's rent is paid by Monday). The
last month's (August 1--August 19) is $735.48


Per the lease, the required rent (including the final month's) is due on the first of
the month. The security deposit is designed as insurance against any damage to the
unit. It is not a reserve for which you can pay rents and fees. I have tried to be
as lenient as possible but having received no notification or rent this entire month
[July] I have no choice but to enforce our contract.


Please contact me if necessary. I expect the remaining balance on July's rent
($600) plus July's late charges ($110) immediately.


 Barry



Attached to the foregoing message was the following tabulation of late-payment charges:



Date (3) Transaction Debit Credit Balance


 7-March Late Fee 40 40

16-April Late Fee 80 120

14-May Late Fee 70 190

12-Jun Late Fee 60 250

22-Jul Late Fee 110 360


** Assuming receipt of July rent on 7/22



 In response, Smith received from Kyle the following letter, dated July 26, 1996,
in which was enclosed Kyle's check for $400:


Dear Barry:


Enclosed is a check in the amount of $400.00. This payment includes the prorated
rent for the month of August, in addition to the amount of late charges that I am
willing to pay. In regards to the $600.00 payment due for the month of July,
please accept my security deposit, also in the amount of $600.00, as the July
payment.


I have vacated the apartment, please examine the premises for any damage which
you believe to be covered by the security deposit. If you find any damage please
let me know immediately, but in no event later than Wednesday, July 31, 1996. 
If there is no damage please accept the enclosed check as full and final payment
under the lease.


If you have any questions, please do not hesitate to contact me.


 Sincerely,


 Kyle Carter



(emphasis added).

 Smith cashed Kyle's $400.00 check without further communication to Kyle until
September. In a message to Kyle and his co-tenant, dated September 22, 1996, Smith demanded
$655.56 over and above their security deposit of $1200.00, a net sum arrived at in the following
statement of account that accompanied the message:

Late-rent fees (4) $ 360.00


August 1996 rent (5) 600.00


Repairs, replacements, and cleaning (6) 895.56

 


Total $ 1,855.56


Less deposit 1,200.00

 


Net amount owing $ 655.56

 



 When payment of the $655.00 was not forthcoming, Smith sued the Carters, the
co-tenant, and the latter's guarantor to recover damages for breach of the lease contract. Shortly
before trial, Smith settled and compromised his claim against the co-tenant and his guarantor in
consideration of $300.00. In an amended petition, Smith dismissed the settling defendants and
proceeded against the Carters.

 After a trial without a jury, Smith recovered against the Carters judgment in the
principal amount of $4,741.83, together with court costs and post-judgment interest. The
judgment specified that the principal amount was the aggregate of the following: $1,095.83 in
"actual damages," $1,646.00 in wages that Smith lost by attending the trial, and $2,000.00 as his
attorney's fees. The Carters appealed to this Court.


ACCORD AND SATISFACTION


 In their pleadings, the Carters interposed the defense of accord and satisfaction
resulting from Kyle's tender of the $400.00 with his offer to surrender his half of the security
deposit ($600.00), as set out in his letter to Smith, dated July 26, 1996, coupled with Smith's
acceptance of the tender and offer as evidenced by his cashing the check. In one conclusion of law
denominated a "finding of fact," the trial judge determined that these undisputed facts did not
constitute an accord and satisfaction, a determination repeated under the heading "conclusions of
law." There are no findings of fact that reveal the judge's actual reasoning in reaching this
conclusion. The relevant facts are undisputed, however, and we will sustain the Carters' appellate
complaint that they established the affirmative defense as a matter of law.

 An "accord" is a contract between a creditor and his debtor looking to the discharge
of the former's claim by some performance by the debtor that is different from that which is
claimed to be due; "satisfaction" results from the parties' performance of the "accord" or contract. 
See Restatement of Contracts § 417 cmt. a, at 785-86 (1932). Like any other contract, an accord
requires an offer, an acceptance, and consideration if the contract is to be enforceable. The
element of consideration exists as a matter of law when the creditor's claim is unliquidated or in
good faith disputed. See Gulbis, Annotation: Modern Status of Rule that Acceptance of Check
Purporting to be Final Settlement of Disputed Amount Constitutes Accord and Satisfaction, 42
A.L.R. 4th 12 (1985). A claim is unliquidated if the amount thereof has not been fixed by
agreement or cannot be exactly determined by application of rules of law or arithmetic, and the
entire claim is unliquidated if only a part is of that character. See 3 Williston on Contracts § 7:34,
at 552-59; § 7:35, at 560-68 (4th ed. 1992); Restatement of Contracts § 417 cmt. c (1932). At
the time of Kyle's letter dated June 26, 1996, the amount of late-rent fees was both unliquidated
and disputed as indicated by the letter itself, and the remaining sums claimed by Smith were
unliquidated under the applicable measures cited above.

 A bank check may be tendered in full payment of an unliquidated or disputed claim
on condition that its acceptance shall constitute satisfaction of the claim. See Jenkins v. Henry C.
Beck Co., 454 S.W.2d 454, 455 (Tex. 1970); Rycade Oil Corp. v. Lasater, 375 S.W.2d 556, 558
(Tex. Civ. App.--Austin 1964, no writ); Davenport, Accord and Satisfaction--Part Payment of
a Liquidated Claim, 6 Tex. L. Rev. 377 (1928); A.S.G., Jr. Accord and Satisfaction
--Consequences of Accepting a Check Marked Paid in Full, 16 Tex. L. Rev. 101 (1937). The
condition need not be expressed on the check itself; it may, for example, be expressed in a letter
transmitting the check, as in the present case. See Miller Bros. & Co. v. H. Lesinsky Co., 202
S.W. 992, 993 (Tex. Civ. App.--El Paso 1918, no writ). The creditor must, however, be made
aware that the tender of the check is in full settlement of his claim; the language employed must
be so clear, full, and explicit that it is not reasonably susceptible of any other interpretation. See
Jenkins, 454 S.W.2d at 455; H. L. "Brownie" Choate, Inc. v. Southland Drilling Co., 447 S.W.2d
676, 679 (Tex. 1969); Industrial Life Ins. Co. v. Finley, 382 S.W.2d 100, 105-06 (Tex. 1964).

 If the creditor's acceptance is not to be in full accord with the terms of the debtor's
tender, the debtor may not cash the check and it is said that he comes under a duty to return it and
notify the debtor that the claim cannot be settled on the basis set out in the debtor's offer. See
Turner v. Day, 322 S.W.2d 300, 305 (Tex. Civ. App.--Waco 1959, writ ref'd n.r.e.). In any
event, the creditor may not unilaterally disregard or modify the terms of the debtor's offer, cash
the check, and bind the debtor to the modified terms or claim that more money is actually owing. 
See Texas & P. R. Co. v. Poe, 115 S.W.2d 591, 592 (Tex. 1938); Silvers Box Corp. v. Boynton
Lumber Co., 297 S.W. 1059 (Tex. Civ. App.--Eastland 1927, writ ref'd); Trevino v. Brockhill
Capital Res., Inc., 782 S.W.2d 279, 281 (Tex. Civ. App.--Houston [1st Dist.] 1989, writ
dism'd); Hixon v. Cox, 633 S.W.2d 330, 331 (Tex. App.--Dallas 1982, writ ref'd n.r.e.). In the
present case, Smith did not return the check; he cashed it, and claimed that additional sums were
owing. 

 In all events, we hold that Kyle's letter of July 26, 1996, was clear, full, and
explicit so as to be susceptible of only one interpretation regarding any and all sums claimed by
Smith under the lease. In his letter, Kyle tendered the check on the following terms and
conditions:

 1.  The enclosed $400.00 check would constitute payment of Kyle's half ($367.74)
of the prorated rent ($735.48) for August, which was not yet due, plus the amount ($32.26) in
late-rent fees that Kyle was "willing to pay" of the $360.00 demanded as such fees in Smith's
"faxed" message of a few days before.

 2.  Kyle's half ($600.00) of the July 1996 rent, then past-due and owing, would be
paid by Smith's applying to that obligation Kyle's $600.00 held as a security deposit.

 3.  If Smith could not so apply the $600.00 security deposit, because of damage to
the premises, Smith would notify Kyle immediately but not later than July 31, 1996.

 4.  If Smith found no damage to the premises, however, Kyle's $600.00 security
deposit and $400.00 check would constitute "full and final payment under the lease." (7)

 It is undisputed that Smith received Kyle's letter and read the conditions expressed
therein: if Smith found damage covered by the security deposit, he would contact Kyle
immediately; and if Smith found no damage, he would accept the check and Kyle's security deposit
as "full and final payment under the lease." (8) Smith was not authorized by Kyle's offer to cash the
$400.00 check under any other conditions; and, as a matter of law, the check was not delivered
to Smith free of any conditions whatever. Under the authorities cited above, Smith was thus
bound either to refuse the offer and tendered check or accept the check burdened by the conditions
of the offer. And by cashing the check, he implicitly agreed to the only conditions under which
he was authorized to cash it. See Root & Fehl v. Murray Tool Co., 26 S.W.2d 189, 191 (Tex.
1930); Hixon, 633 S.W.2d at 331-32. He certainly was not free to cash the check and disregard
the conditions under which it was tendered, and he never offered to return it.

 We hold the Carters established as a matter of law the accord and satisfaction
alleged. We therefore reverse the judgment recovered against them by Smith. We will render
judgment that Smith take nothing by his action against the Carters.

 Because of our holding respecting the Carters' defense of accord and satisfaction,
we need not consider their remaining assignments of error assailing Smith's judgment for money
damages, costs of court, and attorney's fees.


COUNTERCLAIM


 The trial-court judgment denies relief on the Carters' counterclaim against Smith
based on an allegation that he "wrongfully" retained Kyle's share ($600.00) of the $1,200.00
security deposit, for which the Carters claimed the damages authorized by section 92.109 of the
Texas Property Code. (9) The Carters contend on appeal that the trial court erred in its judgment
because they established as a matter of law their entitlement to such damages in their statutory
cause of action. We hold to the contrary as a matter of law.

 Because Smith was entitled by the terms of the accord and satisfaction to retain the
deposit and apply it as directed in the accord, it necessarily follows that he acted with the Carters'
consent and could not, therefore, have acted wrongfully or in bad faith. Consequently, the
forfeitures, damages, burden of proof, and presumptions of section 92.109 were and are
irrelevant. We affirm that part of the trial-court judgment that denies the Carters relief on their
counterclaim.

 For the reasons given, we reverse that part of the judgment awarding Smith
recovery against the Carters for breach of the lease contract and render judgment that Smith take
nothing in that regard. We affirm that part of the judgment denying the Carters relief on their
counterclaim against Smith.



 

 John E. Powers, Justice

Before Chief Justice Aboussie, Justices Kidd and Powers*

Affirmed in Part; Reversed and Rendered in Part

Filed: August 26, 1999

Do Not Publish




* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Smith has not filed an appellate brief. Our summary of the controversy is taken from the
Carters' brief, supplemented by the exhibits introduced at trial together with Smith's testimony. 
See Tex. R. App. P. 38(f) (1999). Save for his attorney, who testified as to his attorney's fees,
Smith was the only witness who gave testimony at trial.
2. The prohibition referred to in the lease is apparently that found in section 92.108 of the
Texas Property Code, which states that a "tenant may not withhold payment of any portion of the
last month's rent on grounds that the security deposit is security for unpaid rent"; and a tenant who
does so is presumed to have acted in bad faith and "is liable to the landlord for an amount equal
to three times the rent wrongfully withheld and the landlord's reasonable attorney's fees in a suit
to recover rent." Tex. Prop. Code Ann. § 92.108 (1995). By its very terms, the statute does not
purport to preclude a consensual transaction between the landlord and his tenant in which they
agree to apply the security deposit to unpaid rent, as in the accord and satisfaction discussed in the
present appeal.
3. The sums listed cannot be "liquidated" sums because they are not determinable by rules of
arithmetic alone, the terms of the lease, or rules of law. This is necessarily so because the
meaning of the word "date" is not determinable from the evidence. It might mean the date
payment was posted by mail (the "mailbox rule"), the date payment was received, or the date
payment was credited to the tenants' account. It is necessary to know the legally applicable date
before the amount of a "late fee" may be termed "liquidated."
4. The late-rent fees were for the same months and in the same amounts as those set out in
Smith's previous "fax" message to Kyle sent a few days before July 26, 1996.
5. The lease contract specified $734.48 as the prorated rent for the truncated nineteen-day
occupancy in August 1996, half of which would be $367.79. No explanation of Smith's demand
for $600.00 for the August 1996 rent appears in the record.
6. The amount demanded for repairs, replacements, and cleaning is the aggregate of the
following sums: key not returned ($28.25); carpet cleaning ($75.00); repair hole in subfloor
($43.00); cleaning ($137.43); light bulbs and air-conditioner filters ($30.23); painting ($365.00);
and repair of broken glass pane in door ($216.65).
7. The terms of the letter admit of only one understanding to any person of average
intelligence: Kyle would be liable for no further obligation under the lease if Smith accepted the
offer. Cf. Industrial Life Ins. Co. v. Finley, 382 S.W.2d 100, 102-03 (Tex. 1969) ("enclosing
herewith our check in the amount of $814.52 which is full and final settlement for the commissions
due under our contract"); Texas & P. Ry. Co. v. Poe, 115 S.W.2d 591, 591-92 (Tex. 1938) (draft
"[i]n full and complete settlement and payment for personal injuries and damages").
8. Smith testified that he read but did not fully understand Kyle's letter of July 26, 1996. He
admitted cashing the check and applying the $400.00 to Kyle's half of the rent due for July (not
August as specified in the tender and offer) because it was owed and he was "trying to, basically,
recover any money I could from the Defendant, based on their [sic] past history." This is
tantamount to an admission that he disregarded the letter entirely and cashed the check
notwithstanding the terms stated therein.
9. See Tex. Prop. Code Ann. § 92.109 (West 1995). The statute authorizes a tenant to recover
from a landlord $100.00, three times the portion of the deposit wrongfully withheld, and
reasonable attorney's fees when the landlord retains a security deposit in bad faith and in violation
of the applicable code provisions. The landlord bears the burden of proving that his retention of
the deposit was reasonable and is presumed to have acted in bad faith when he fails to return the
deposit or provide a written description and itemization of deductions on or before the 30th day
after the tenant surrenders possession; and the landlord's failure to furnish the description and
itemization results in a forfeiture of his right to withhold any portion of the security deposit or to
sue the tenant for damages to the premises. Id.



TYLE="font-family: CG Times">* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Smith has not filed an appellate brief. Our summary of the controversy is taken from the
Carters' brief, supplemented by the exhibits introduced at trial together with Smith's testimony. 
See Tex. R. App. P. 38(f) (1999). Save for his attorney, who testified as to his attorney's fees,
Smith was the only witness who gave testimony at trial.
2. The prohibition referred to in the lease is apparently that found in section 92.108 of the
Texas Property Code, which states that a "tenant may not withhold payment of any portion of the
last month's rent on grounds that the security deposit is security for unpaid rent"; and a tenant who
does so is presumed to have acted in bad faith and "is liable to the landlord for an amount equal
to three times the rent wrongfully withheld and the landlord's reasonable attorney's fees in a suit
to recover rent." Tex. Prop. Code Ann. § 92.108 (1995). By its very terms, the statute does not
purport to preclude a consensual transaction between the landlord and his tenant in which they
agree to apply the security deposit to unpaid rent, as in the accord and satisfaction discussed in the
present appeal.
3. The sums listed cannot be "liquidated" sums because they are not determinable by rules of
arithmetic alone, the terms of the lease, or rules of law. This is necessarily so because the
meaning of the word "date" is not determinable from the evidence. It might mean the date
payment was posted by mail (the "mailbox rule"), the date payment was received, or the date
payment was credited to the tenants' account. It is necessary to know the legally applicable date
before the amount of a "late fee" may be termed "liquidated."
4. The late-rent fees were for the same months and in the same amounts as those set out in
Smith's previous "fax" message to Kyle sent a few days before July 26, 1996.
5. The lease contract specified $734.48 as the prorated rent for the truncated nineteen-day
occupancy in August 1996, half of which would be $367.79. No explanation of Smith's demand
for $600.00 for the August 1996 rent appears in the record.
6. The amount demanded for repairs, replacements, and cleaning is the aggregate of the
following sums: key not returned ($28.25); carpet cleaning ($75.00); repair hole in subfloor
($43.00); cleaning ($137.43); light bulbs and air-conditioner filters ($30.23); painting ($365.00);
and repair of broken glass pane in door ($216.65).
7. The terms of the letter admit of only one understanding to any person of average
intelligence: Kyle would be liable for no further obligation under the lease if Smith accepted the
offer. Cf. Industrial Life Ins. Co. v. Finley, 382 S.W.2d 100, 102-03 (Tex. 1969) ("enclosing
herewith our check in the amount of $814.52 which is full and final settlement for the commissions
due under our contract"); Texas & P. Ry. Co. v. Poe, 115 S.W.2d 591, 591-92 (Tex. 1938) (draft
"[i]n full and complete settlement and payment for personal injuries and