**FIRESTONE TIRE & RUBBER CO.,**
Appellant,

v.

**Huey R. WHITE et al., d/b/a C & W Firestone Dealer Store, Appellees.**

No. 14862.

Court of Civil Appeals of Texas.

Dallas.

Nov. 26, 1954.

Rehearing Denied Jan. 14, 1955.

Gerald L. Johnson, Dallas, for appellant.

Worsham, Forsythe & Riley, Earl A. Forsythe, Dallas, for appellees.

CRAMER, Justice.

Appellant Firestone Tire & Rubber Company filed this suit against appellee White and Judson A. Crow, copartners trading as C & W Firestone Dealer Store, on a sworn account for $455.69 plus interest from January 1, 1953 and a reasonable attorney's fee under Art. 2226, R.C.S., Vernon's Ann.Civ. St. Appellees answered by general and sworn denial of the account and a plea of accord and satisfaction. On trial before the court judgment was rendered that appellant recover nothing, based on written findings of fact then filed which were in substance, material here, as follows: (4) That on July 23, 1951 White and Crow as partners delivered to Firestone a written agreement to the effect that they would be responsible individually and collectively for any indebtedness the partnership might incur with Firestone; (5) White and Crow operated as partners until Oct. 31, 1951, White, how-

ever, during that time continuing in the employ of Firestone; (6) that from July 23 to October 31, White purchased from Firestone many items of merchandise (7) consisting of household appliances which were for a time held in Firestone's warehouse and later delivered and placed in a building under construction by Crow near where C & W Firestone Dealer Store was to open business; (8) such store however did not open until Dec. 25, 1951; (9) that shortly after appellees opened their store the models on washing machines, refrigerators, and television sets so purchased were changed; (10) that when Crow learned that White had purchased a large quantity of merchandise from Firestone, some of said merchandise being washing machines, refrigerators and television sets whose models were soon to change, Crow complained in good faith to the representatives of Firestone, first, about the retention of such merchandise in Firestone's warehouse, and second, about its delivery into the building Crow was constructing, and third, such merchandise could not be sold because of model changes; and therefore such merchandise should be taken back and credit given C & W for same; (11) that Crow complained in good faith to representatives of Firestone that such merchandise had been sold to White while White was still in the employ of Firestone and that Firestone had loaded Crow with such merchandise, and that it should be returned for credit; (12) that Crow continued in good faith to assert such complaints against Firestone down to and including April 30, 1952 when the C & W Store was sold by Crow and White to Jack Wilkie Service Station (13) on or about April 30, 1952; (14) that when Crow and White sold to Wilkie they had on hand a statement from Firestone showing a balance due from C & W Store to Firestone of $2,510.99, and they and Wilkie asked Firestone for a confirmation of such amount and that Tony Crono contacted Firestone Credit Department and then advised Crow and White that the balance was $2,510.99; Jack Wilkie Service Station then issued its check dated April 30, 1952 to C & W Firestone Dealer Store and Firestone Tire & Rubber Company for $2,510.99, with notation: "This is to be deducted from total amount of stock and equipment from C & W Firestone, also acct. paid in full." The check was endorsed "C & W Firestone Store by J. A. Crow, H. R. White" and was received, accepted, and cashed by Firestone in due course of business. (15) That White and Crow requested Firestone to furnish the amount due at the time of the sale to Wilkie on or about April 30, 1952, so that they might know the full amount due; that Firestone, through oversight, mistake, and unexplained delay, failed to include the $455.69 when the sale was made to Wilkie; (16) that there was no evidence to show what items, claims, or demands were paid for by the April 30 $2,510.99 check which was received and acccepted by Firestone, and " * * * therefore I find there is no evidence to show that the amount owed by defendants to plaintiff on April 30, 1952, was a liquidated demand." (17) That the check of April 30 was delivered to Firestone with the intent that the account was to be paid in full; that at the time the check was delivered and accepted, Crow was contending in good faith that Firestone overloaded C & W Firestone Dealer Store in the sale of merchandise at a time when defendant White was still representing Firestone, and that the merchandise was not delivered promptly, that the models had changed on certain appliances purchased and Crow was entitled to have such merchandise returned for credit, and that a bona fide controversy then existed thereon between Crow, the C & W Firestone Dealer Store, and appellant Firestone Tire & Rubber Company; (18) that Crow at the time the $2,510.99 check was delivered and accepted, and for a long time prior thereto, felt he had been mistreated by Firestone; that he had grievances which should have been satisfied by Firestone; (19) that items (seven listed by number only) were ordered by Crow and White on dates and for prices alleged in the pleadings, and were delivered to C & W on dates after those shown, but prior to April 30, 1952; (20) that the items sued on by Firestone were not charged to the C & W Store until a period beginning May 31, through July 31, 1952; (21) and no demand on C & W for pay-

ment therefor was made until after the sale to Wilkie on April 30, 1952; (22) that Crow and C & W Store intended the $2,510.99, April 30, check accepted by Firestone to be in full payment of all accounts, debts, and claims of every kind and character owed to Firestone; (23) that no written demand was ever made by Firestone on C & W Store for payment of the account sued on; (24) which account was incurred prior to the amendment of Art. 2226 providing for attorney's fees; (25) all facts not expressly found, "the court finds in favor of the judgment."

The court's conclusions of law were in favor of Crow and C & W Firestone Dealer Store, and also that Art. 2226 was not complied with, and further that the account was incurred prior to the effective date of the amendment to Art. 2226.

Firestone briefs four points as follows: "(1) The plaintiff proved that it had in the general course of business, at the instance and request of defendant, sold goods, wares and merchandise to defendants, which were delivered to them and on which there was due the plaintiff the sum of $455.69 after all just credits, payments and offsets had been allowed. (2) Defendants had the burden of proving a bona fide dispute as pled in their answer, and there was no evidence to support a finding by the court of a bona fide dispute between the plaintiff and defendants. (3) The defendants had the burden of showing that there was an accord between them and the plaintiff, and there is no evidence to show that there was an accord, which would be a proper predicate for a satisfaction of the account sued upon. (4) The burden was upon the defendants to show, as pled by them, that the plaintiff had accepted a sum of money in compromise and settlement of all matters in dispute between them, and that the defendants had paid to the plaintiff a sum of money in full settlement of said account; and the defendants did not meet this burden, in that there was no evidence to sustain such a finding by the court."

Crow and C & W Store reply with two counter-points as follows: "The appellees J. A. Crow and C & W Firestone Dealer Store alleged and proved that there existed a bona fide dispute between the appellant and the appellee J. A. Crow and C & W Firestone Dealer Store with respect to certain merchandise sold by the appellant to C & W Firestone Dealer Store, at the time the appellees tendered to the appellant, and the appellant accepted, a check dated April 30, 1952, in th amount of $2,510.99, marked 'Account paid in full,' and that the acceptance of such check by the appellant under such circumstances constituted an accord and satisfaction and a payment in full of all sums owing to the appellant which had accrued prior to the date of such check. (2) The acceptance by the appellant of a check tendered by the appellees dated April 30, 1952, in the amount of $2,510.99 marked 'Account paid in full,' where there was no evidence to show that the account 'paid in full,' was a liquidated demand, constituted a full accord and satisfaction of all sums due and owing to the appellant, and the appellant could not sue for the payment of additional items which had accrued prior to the date of the acceptance of such check."

All points and counterpoints will be considered together. As we view the record the only question material to all points and counterpoints is whether or not there was such a dispute between the parties shown by the evidence as will sustain C & W Store's pled defense of accord and satisfaction through a compromise settlement of all claims by Firestone including the balance sued on herein.

■ The consequences of accepting a check marked "Paid in full" are stated in 16 Tex.Law Review 101, as follows: "Where a claim is unliquidated or disputed, the cashing of a check marked 'in full payment' is a binding accord and satisfaction and extinguishes the claim, * * * and the tender of the check is regarded as an offer to settle the claim for the amount of the check; the receipt and cashing of the check is regarded as the acceptance and promise to discharge the claim. The consideration is the same as in any case of settlement of a disputed or unliquidated claim. The cashing of the check is held to consti-

tute an acceptance even though the words 'in full payment' are erased by the creditor before he cashes the check. * * * Where the claim is not unliquidated or disputed, the acceptance of a check marked 'payment in full' does not prevent the creditor from collecting the balance, even though he cashes the check. * * * There are varying degrees of liberality as to what constitutes a disputed or unliquidated claim. The Oklahoma cases require an honest dispute and substantial grounds for disagreement. * * * The New York cases are more liberal saying that the dispute must be in good faith though there need be no solid foundation for the dispute. * * * In line with the New York cases, the Texas courts require a bona fide dispute urged in good faith." See Texas cases cited in 16 Tex.Law Review, supra; 1 Am. Jur. 225, sec. 24; 1 C.J.S., Accord and Satisfaction, § 32b, (1) and (2), page 515.

■ Here the evidence shows a dispute as to an unliquidated offset or amount due based on White's purchasing from Firestone, while he (White) was both an employee of Firestone and a partner of Crow, certain items upon which the models were soon to be changed, and the making of excess purchases of certain other items. This matter was unsettled at the time the check was delivered to Firestone, marked "* * * account paid in full." It is undisputed that the items involved in this suit had been delivered by Firestone to the partnership store and had not been paid for by the partnership, but overlooked by Firestone and not included in its statement of the amount due.

It is also undisputed that at the time the statement of the incorrect total amount due was submitted by Firestone, Firestone's employee either overlooked, or for some other reason did not have knowledge of other merchandise purchased but not included in the statement. It is also shown in the record that Crow at the time he received the statement did not know such merchandise so delivered was not included in the Firestone statement. The record does, however, make a question of fact as to

knowledge thereof by other agents of Firestone, and by White.

■ From the above it appears that Firestone's agent who sent the statement, and the agent who later confirmed the amount, were mistaken in the amount of the open account. It also appears that Crow was mistaken as to the full amount he was to realize from the sale and the total amount of the recovery for his investment in C & W Store, which of course included losses from the acts of his partner, an employee of Firestone, in his purchases from Firestone for the partnership of Crow and White. The record therefore shows that each party was laboring under a mistake of fact,—Firestone as to the amount due and Crow as to the amount of his loss in the partnership venture. That is to say, neither party knew all the material facts at the time Firestone confirmed the balance due by Crow and at the time Crow paid such stated balance. Under such circumstances each party failed to fully develop his evidence on material issues, to wit, the amount of damage or loss to Crow and the C & W Store by reason of losses from orders by White on merchandise on which the models changed before they could be offered for sale, and the question of liability, if any, of White and/or Firestone therefor.

■ There is no question but that the account of $455.69, considered separately, was due by C & W Store, and that there was a bona fide dispute as to the liability of Firestone to C & W Store and/or Crow based on the items above referred to; and the record shows little evidence, or at least that the evidence was insufficient to sustain the finding by the court that the money paid by C & W Store ($2,510.99) was with full knowledge of the parties intended to be in full settlement of all matters between the parties including the claim by Crow against Firestone.

Under such record justice can be better served by reversing the judgment of the trial court and remanding the cause for a new trial, when a full development of all material issues can be had.

Appellant's points are sustained and the judgment below is here reversed and the cause remanded for a new trial.

Reversed and remanded.