**Clem G. FLOWERS, et al.,**
**Plaintiffs-Appellants,**

v.

**DIAMOND SHAMROCK**
**CORPORATION,**
**Defendant-Appellee.**

No. 81–1396.

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1982.

Rehearing Denied Jan. 10, 1983.

---

R.C. Hamilton, Amarillo, Tex., for plaintiffs-appellants.

Underwood, Wilson, Sutton, Berry, Stein & Johnson, Harlow Sprouse, Alan B. Jones, Amarillo, Tex., for defendant-appellee.

Before GARZA, TATE and WILLIAMS, Circuit Judges.

TATE, Circuit Judge:

In this Texas diversity suit, the plaintiffs (the Flowers), lessors of the mineral rights of Texas oil and gas fields, seek additional royalties under a market value royalty provision contained in their leases with the defendant, Diamond Shamrock Corporation (Shamrock). The Flowers contend that Shamrock did not base royalty payments on the "market value" of subsequent sales of the gas from the leased properties, but rather only on the lower amount of the actual proceeds from Shamrock's long-term sales contract with an intrastate distributor. The plaintiffs Flowers' cause of action is founded upon the Texas jurisprudential holdings that a landowner-lessor is entitled to royalty payment for gas sold off his premises based upon the market value at the time of sale after production, not upon the price established between the producer and the distributor under an earlier long term contract. *Texas Oil & Gas Corporation v. Vela,* 429 S.W.2d 866, 870–71 (Tex. 1968).

The district court set aside parts of favorable jury determinations that justified an award to the Flowers of increased royalties. In so doing, the court held (1) that the endorsement of royalty checks as a matter of law constituted an accord and satisfaction as to some of the earlier royalty payments, and (2) that the effect of the Natural Gas Policy Act prevented the recovery of additional royalties for some of the later payments, since those sought were in excess of the maximum price for intrastate gas permissible under this federal regulation. For the interim in which additional royalties were held to be properly due under *Vela,* the district court also (3) permitted Shamrock to deduct for payment of Texas severance taxes a percentage of the royalties so due. On their appeal, the plaintiffs Flowers attack these three determinations.

We affirm the district court's entry of judgment notwithstanding the verdict as to (2), but we hold as to (1) that the jury could properly find on the evidence before it that, when the Flowers endorsed the royalty checks, there was no bona fide dispute as to the amount thereof (an essential prerequisite under Texas law to an accord and satisfaction), so that the district court therefore erred in granting judgment notwithstand-

ing the jury verdict. We remand for the determination of additional royalties therefore due, and we also remand as to (3) for the determination of the severance-tax deduction issue.

*The Facts*

The plaintiffs Flowers have royalty interests under an oil and gas lease on lands in Ochiltree County, Texas. The defendant Shamrock, as lessee, agreed to pay the plaintiffs royalties based on the "market value" of the natural gas produced from a well it drilled on the property.[1] Gas was discovered on the property in 1963 and since that date has been sold and used solely within the state of Texas.

Shamrock pipes the natural gas from the well to its refinery, where the liquid contents of the gas are stripped,[2] and the residue is sold at the plant "tailgate" to a distributor. Although it commingles the gas from many wells at the refinery, Shamrock measures at each well the volume (by thousand cubic feet, or MCF) and the heating value (by British Thermal Unit, or BTU) of the gas. In 1965 Shamrock committed the gas from the Flowers' well, in addition to that produced from other leased properties, to a twenty-year sales contract with the Southwestern Public Service Company (Southwestern), setting a beginning price at 19.5 cents per thousand cubic feet of gas containing 1000 BTU per cubic foot, escalating over the life of the contract to 22.5 cents. Shamrock has paid the Flowers a royalty based on this contract price, or at times a slightly higher price.

Shamrock tendered to the plaintiffs monthly checks for royalty payments calculated upon the contract price, and the plaintiffs endorsed and cashed these checks. A stub was attached to each check which showed lease numbers, a number that presumably showed the volume of production, the amount of severance tax deducted, and an amount labelled "Your Part," which was the amount of the check. The following small print appeared on the back of the check itself:

**ENDORSEMENTS**

This check is issued in full settlement of the account stated and the payee accepts it as such by his endorsement. If not correct, return without alteration and state difference.

On February 15, 1974, Shamrock sent a form letter to its royalty owners, including the Flowers, offering to pay higher royalties if the lessor executed a contract agreeing to accept royalties directly based on the sales contract proceeds from the lessee-distributor sales contracts rather than on the market value method of computation set forth in the original leases. On July 29, 1974, Marvin Flowers, for the Flowers, replied that there was no reason to execute an agreement to obtain a rate increase to which the lessors were entitled, and requested payment of "deficit funds" from February.[3] Shamrock acknowledged re-

---

1. The gas royalty clause of the lease provides that:

> The royalties to be paid by lessee are: . . . on gas, including casinghead gas or other gaseous substances, produced from said land and sold or used off the premises or for the extraction of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used. . . .

Shamrock is the corporate successor to Shamrock Oil and Gas Corporation, the lessee by assignment of the mineral interests in the Flowers' properties. For convenience, use of the Shamrock name includes the predecessor in title or corporate entity.

2. In their brief to this court, the Flowers also contend that they are entitled to payment for this liquid residue, for which admittedly Flow-

ers received no payment from Shamrock, although in the miniscule evidentiary reference to this topic a witness for the producer-lessor admitted it had some value. So far as we can see, this issue was not raised before the district court, and no evidence was introduced as to the amount of this liquid residue nor as to its value. Even if the issue is before us, no evidence in the record justifies the award so sought in brief, nor is there presented to us for review any adverse ruling by the trial court as to this issue.

3. The July 29, 1974 letter by Marvin Flowers stated:

> I have your letter of February 15, 1974, written to me stating that you wished to offer an immediate and substantial increase in my

ceipt of that letter in a response attached to the plaintiffs' original pleading, but not introduced into evidence, informing the Flowers that it would continue to pay the royalty in accordance with the lease provisions.

The plaintiffs did not express further dissatisfaction with the amount of royalties received, but stopped endorsing and cashing the checks in February, 1977,[4] and eventually brought this lawsuit.

The plaintiff-lessors sued for the difference in the royalties due them under *Vela* since December, 1973. Trial was to a jury, which found the market values for the applicable months and failed to find for the defendant on its affirmative defense of accord and satisfaction. The trial court granted Shamrock's motion for judgment notwithstanding the verdict on two counts. First, the court held that the defendant had established its accord and satisfaction defense as a matter of law as to those months from 1973 to 1977 when royalty checks were cashed by the plaintiffs. No recovery was therefore awarded for those months. Secondly, the court held that under the Natural Gas Policy Act, 15 U.S.C. § 3301 *et seq.* (1978), the contract price received by Shamrock measured the proper market value for royalties payable to the Flowers' lessors, thereby preventing recovery by the plaintiffs for additional royalties on production had after December 1, 1978. The district judge entered judgment in favor of

the Flowers for additional royalties under *Vela* at the actual market value of the gas between 1977 (when the Flowers last endorsed the checks) and 1980 (the last year at issue in this case), *but* the court also ordered a deduction from the amounts so awarded in the amount of 7.5% for Texas production and severance taxes due upon the gas so produced.

As earlier stated, the Flowers contend that the district court erred in its rulings as to (1) accord and satisfaction, (2) market-value price established by federal regulation, and (3) severance-tax deduction.

### I. *Accord and Satisfaction*

The district court held that the evidence adduced in trial showed, as a matter of law, that the royalty checks cashed by the plaintiffs were accepted in satisfaction of an unliquidated claim. Any dispute over the market value of the gas on which the Flowers' royalties were based was therefore conclusively resolved in an accord and satisfaction with Shamrock that foreclosed recovery of additional amounts.

The plaintiffs Flowers point out that judgment notwithstanding a jury verdict should not be granted by the trial court unless "the facts and inferences point so strongly and overwhelmingly in favor of one party that . . . reasonable men could

---

royalty rate pending the signing of an enclosed royalty agreement. The June 1974 gas payment reflected this rate increase.

I am not aware of any previous agreement with you which makes it a requirement for me to sign any document prior to receiving a rate increase on natural gas production from the aforesaid leases.

With this understanding, I am requesting that you pay deficit funds due for the months of February, March, April, and May.

Marvin Flowers testified that he wasn't "sure what the implications" of the communication received by him from Shamrock were, that "he was dissatisfied with what I was getting for my gas," that he thought from Shamrock's letter that he "was due more money going back to February, 1974," but that he was "not technically sharp enough to know what he was getting for my gas." The evidence reveals that the Flowers did not at that time consult a lawyer and that they were completely unaware of their

right under *Vela* to receive royalties at all times after the initial production in 1965 that were based on the actual market value of the gas rather than upon the price received by Shamrock from its sales under the contract with the distributor. The purport of Marvin Flowers' testimony, rather, is that he suspected for reason unknown, but probably related to the measurement of the gas or to the price actually received by Shamrock from the distributor, that since February 1974 the gas royalties paid to the Flowers were insufficient—otherwise Shamrock would not have offered the new contract in February 1974.

4. One of the plaintiffs, Dorlea Flowers Hoover, continued to cash the royalty checks until June, 1977. The district court adjusted the judgments and awards below to reflect this different date.

not arrive at a contrary verdict." *Boeing v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). In ruling upon such a motion, the court must consider all the evidence "in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Id.* Tested by this standard, we agree with the plaintiffs Flowers' contention that the evidence before the jury reasonably permitted a determination, as a factual matter, that at the time the Flowers perfunctorily endorsed their royalty checks, they were not aware of any bona fide dispute between themselves and Shamrock as to the amount of gas royalties due to them under the lease. The jury could thus find under the evidence that, by their endorsements, the Flowers could not have intended to relinquish their rights under *Vela* to additional gas royalties based upon the market value of the gas at the time of production and sale (rather than upon the much lower price received by Shamrock as a result of its long-term contract entered into years earlier with the intrastate distributor).

Shamrock argues that the Flowers' endorsement of the checks conclusively indicates that they relinquished claims to a greater amount. Shamrock contends that this amount was disputed by the Flowers at least as early as July, 1974, the date of the plaintiffs' letter to Shamrock indicating their belief that there may have been a deficit in royalty amounts paid. *See* note 3 *supra.*

The Supreme Court of Texas set out the requirements of an accord and satisfaction in *Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex.1969):

This defense rests upon a new contract, express or implied, in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted.... The minds must meet and where resting in implication the facts proved must irresistibly point to such conclusion.... There must be an unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation. It has been said that the conditions must be made plain, definite and certain ...; that the statement accompanying the tender of a sum less than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation ...; that the offer must be accompanied with acts and declarations which the creditor is "bound to understand"....

*Accord, Harris v. Rowe,* 593 S.W.2d 303, 306 (Tex.1979) (affirmative defense of accord and satisfaction "rests upon a new contract, express or implied, in which the parties agree to the discharge of an existing obligation in a manner otherwise than originally agreed. The tender of the alternate satisfaction is upon the condition that the acceptance will constitute a discharge of the underlying obligation."); *Linskie Co. v. Miller-Picking Corp.,* 463 S.W.2d 170, 173 (Tex. 1971) (reversal of a summary judgment "because defendant did not make known to plaintiff in clear and unmistakable terms that the tender was intended to be made upon the condition that its acceptance would constitute full satisfaction of all pending claims").

The consideration for the new contract establishing a discharge of the prior obligation is the settlement of a bona fide dispute between the parties.[5] *See Roylex, Inc. v. S & B Engineers, Inc.,* 592 S.W.2d 59, 60 (Tex.Civ.App.1979) (*see also* " 'The condition that the tender is in full settlement must be brought home to the creditor' ", *id.*); *Stewart v. Friona State Bank,* 278 S.W.2d 425, 427 (Tex.Civ.App.1955); *Wilson v. Woolf,* 274 S.W.2d 154, 160 (Tex.Civ.App. 1954). In the absence of a bona fide dis-

---

5. Although Texas law continues to distinguish between accord and satisfaction of liquidated claims for a set amount, and of unliquidated claims (where the amount or extent of the obligation is disputed), sufficient consideration for an accord arises out of the settlement of a dispute as to the existence or amount of liability. *See Burgamy v. Davis,* 313 S.W.2d 365, 367 (Tex.Civ.App.1958); *Firestone Tire & Rubber Co. v. White,* 274 S.W.2d 452, 455 (Tex.Civ. App.1954). A bona fide dispute is a prerequisite to an accord of either type of claim. *Id.*

pute as to the obligation owed by the debtor, the acceptance and endorsement of a check marked, "This check is in full settlement of account as shown hereon. Acceptance by endorsement constitutes receipt in full," does not prevent the creditor from collecting the balance of the obligation. *See Ortiz Oil Co. v. Geyer,* 159 S.W.2d 494, 497 (Tex.1942). The requirement of a bona fide dispute presupposes both parties' knowledge that there exists a particular issue as to a greater liability that is settled by the accord. *See Firestone Tire & Rubber Co. v. White,* 274 S.W.2d 452, 455 (Tex. Civ.App.1954), where, even though there was a dispute between the parties as to the debt owed on the purchase of certain merchandise, a judgment for the debtor was reversed because it had not been shown that the money paid was with full knowledge that it was intended to be in full settlement of all matters, including purchases of merchandise the creditor overlooked in preparing the bill.

■ Mutual assent of the parties to settlement of a dispute is a requirement for an accord and satisfaction, and the creditor must fully understand that the amount tendered is conditioned as full disposition of the underlying obligation. "[I]f the creditor is to be held to have surrendered his claim against the debtor, it must be shown that he understood or should have understood that he was doing so when he received the consideration claimed therefor." *Call of Houston, Inc. v. Mulvey,* 343 S.W.2d 522, 524 (Tex.Civ.App.1961). In *Call of Houston,* an employee with a 90-day notice of termination clause in his employment contract was not aware at the time he received payment covering thirty days of the notice period with a check marked "Account in Full" that there was a dispute with his employer as to the necessity of providing ninety days notice or that he accepted the check in settlement of the employer's breach of contract. Because of lack of knowledge and mutual assent, there was no accord and satisfaction.

The parties may refer to past duties or future liabilities between them to prove or disprove the existence of an accord and satisfaction. Such factual issues are to be determined by the jury. *See Call of Houston, supra,* 343 S.W.2d at 525. The Texas cases reiterate the requirement that the minds of creditor and debtor must be found to have met in the making of the new contract "in which the parties agree to the discharge of the existing obligation by means of the lesser payment tendered and accepted." *Industrial Life Insurance Co. v. Finley,* 382 S.W.2d 100, 104 (Tex.1964).

In the present instance, no evidence whatsoever shows that the Flowers had or should have had any knowledge, at the time, that negotiation of these checks would affect or settle a disagreement as to the market value of the gas on which royalties were based. Shamrock's position at all times was that plaintiffs were being paid in accordance with the lease, and there is no evidence in the record that any of the plaintiffs were aware of the incorrectness of that position under *Vela.* The endorsement says that the "account stated" is fully paid and, indeed, the "your part" amount shown on the stub was paid by each check. No issue or dispute relative to value is suggested on the check or stub, and the statement above the place for the endorsement is far from the unequivocal notice to plaintiffs that the checks were conditionally tendered in full and final satisfaction of a disputed obligation, which Texas law requires for there to be an accord and satisfaction. The Flowers' endorsement of the royalty checks signified to them nothing more than acceptance of their part of the gas measured and the account computed at the rate being paid by Shamrock. There is no unequivocal statement here that the endorsement compromises and settles a disputed rate issue; it just as plainly, if not only, purports to make the endorsement an acceptance of Shamrock's arithmetic.[6]

---

**6.** No evidence shows that any of the plaintiffs knew of the holding of *Texas Oil & Gas Corp. v. Vela,* 429 S.W.2d 866 (Tex.1968), and what it

meant to their rights in the settlement of the gas royalty. There, as noted, the Texas Supreme Court held that market value should be

Nor is there evidence that the trial jury was conclusively required to accept to the effect that the Flowers knew that there was a dispute as to the amount of gas royalties due to them, let alone knew that they were indisputably entitled under *Vela* to receive the market value price at the time of sale after production, as opposed to the below-market-value price determined by the contract between Shamrock and *its* purchasor. It is true that in 1974 the Flowers wrote a letter requesting payment of any deficit royalties, but the letter seems to be a response to Shamrock's offer to amend the contract, not acknowledgement of a dispute concerning calculation of market value. At most, any inferences to be drawn from the letter concerning the Flowers' knowledge of a dispute and of the Flowers' intent to reach an accord and satisfaction, were factual issues to be determined by the jury. Under this record, it cannot be said as a matter of law that with the endorsement of these royalty checks the minds of the royalty owners and Shamrock met to change the market value basis for royalty payment to that of the lesser rate which Shamrock had chosen.

■ The district court therefore erred in granting summary judgment to Shamrock in contradiction of the jury verdict in favor of the Flowers. The evidence before the jury permitted it to find that there was no factual basis upon which to base an accord and satisfaction between the Flowers and Shamrock, as allegedly resulting from their endorsement of gas royalty payment checks between December 1975 and March 1977. Accordingly, we reverse that part of the district court's order that denied the Flowers' recovery of additional royalties for this period, and we remand for further calculation of the award due for such royalties. The award is to be based on the jury's month-to-month determination of market value for gas production until March, 1977.

----

determined as of the time of delivery of the gas to the purchaser, rather than as of the time of the making of the contract between the lessee and purchaser, and Shamrock undoubtedly knew four years later of the effect of that holding upon its obligation to these plaintiffs. No other logical reason appears for its attempt

## II. *Effect of the Federal Regulation on Market Value*

■ The district court held, and we affirm, that the Shamrock-Southwestern sales contract price on which Shamrock based royalty payments constitutes market value after December, 1978, because it was equivalent to the government regulated maximum price for gas from the well in question. The Flowers contend that federal law regulates only the sales between Shamrock and Southwestern, and not royalty payments, under their leases. The Flowers point out that Texas law provides that the gas must be valued as if "free and available" for sale within its regulated market. *See Texas Oil & Gas Corporation v. Vela,* 429 S.W.2d 866 (Tex.1968). The Flowers argue that the federal price regulation under the Natural Gas Policy Act of 1978, 15 U.S.C. §§ 3301 *et seq.,* limiting the price of gas sold in intrastate commerce, such as the gas sales here between Shamrock and Southwestern, to the contract price, does not take into account *Vela*'s prescription that market value royalties be based on sales of gas free from actual sales contracts and sales that are treated as if the gas were newly available for sale at the time of production.

We recently addressed the Flowers' concerns about the effect of federal price ceilings on lessee-distributor sales contracts to which the lessor is not a party in a decision determining market value of gas sold in interstate commerce. In *Bowers v. Phillips Petroleum Co.,* 692 F.2d 1015 (5th Cir. 1982), we emphasized that although federal law does not regulate the amount of royalty payments, it regulates the price at which gas subsequently may be lawfully sold and thus implicitly affects market value. *Bowers,* 692 F.2d at 1016. In *Bowers* we dis-

----

to get the plaintiffs to amend the lease in this respect. No explanation was made to the plaintiffs of their *Vela* claim under the existing lease, or of the nature of Shamrock's breach of contract in the payment of royalties on the basis of the 1965 contract.

cussed Texas decisions holding that market value is based on comparable sales of similar gas, but noted that these decisions held that comparability includes the "legal characteristics" of the gas—that is, "whether it is sold in a regulated or unregulated market, or in one particular category of a regulated market." *Bowers*, 692 F.2d at 1017 (quoting *Exxon Corporation v. Middleton*, 613 S.W.2d 240, 246 (Tex.1981)). We held that market value for royalty purposes cannot exceed the maximum price at which the gas produced from the lessor's wells may be sold under its particular categorization in the Act.

Section 105 of the Natural Gas Policy Act, 15 U.S.C. § 3315 (1978), provides that the maximum lawful price of sales of natural gas under any existing contract which was not committed to interstate commerce in November, 1978 shall be the lower of either the price under the terms of the existing contract to which the natural gas is subject or else the price established under 15 U.S.C. § 3312 for "new" uncommitted natural gas (that is, the maximum federal ceilings authorized for current sales of gas not under contract). Since the intrastate gas from the Flowers' property is committed to an existing sales contract, as was the gas in *Bowers,* the lower contract price specified in section 105 is the maximum lawful price at which it may be sold, and therefore constitutes market value. Under the limitations imposed by the Texas Supreme Court in *Middleton, supra,* we cannot establish market value as a price based upon sales of intrastate gas under a different category of the Natural Gas Policy Act.

The district court thus correctly found as a matter of law that the market value of gas produced under the Flowers-Shamrock lease could not exceed its federally regulated maximum price, which in this case was the contract sales price. Since Shamrock paid royalties based on a price that was at least equal to proceeds from the contract sales, we affirm that part of the district court's judgment that denied the Flowers additional royalties for gas production after December, 1978.

III. *Severance-Tax Deduction*

After computing the award for unpaid "market-value" gas royalties due to the Flowers under *Vela* from 1977 through 1980, the district court entered an award decreeing that the sum of 7.5% should be deducted from these awards "representing production and severance taxes levied upon the gas produced." The district court apparently reduced the royalty owner's recovery under authority of *Amoco Production Co. v. Alexander,* 594 S.W.2d 467, 481 (Tex. Civ.App.1979), *aff'd* 622 S.W.2d 563 (Tex. 1981) (severance tax payable out of royalty owner's interest, although collected from the purchaser).

On appeal, the Flowers contend that Shamrock is only entitled to this deduction as offset if the severance taxes so levied are actually paid, relying on *Exxon Corporation v. Jefferson Land Company, Inc.,* 573 S.W.2d 829, 832 (Tex.Civ.App.1978). It contends that the deduction thus may constitute a windfall for Shamrock, if the latter does not in fact pay the tax or if, for instance, collection of it is time-barred. No evidence was taken in the trial judge's post-verdict calculation, from jury determinations of market value, as to the correct amount of royalties due.

Under all of the circumstances, we feel it to be appropriate to vacate that portion of the order allowing the deduction, and to remand for that issue to be considered and determined upon such showing of additional authority or (if required) evidence as may be appropriate.

*Conclusion*

For the reasons stated:

(1) We AFFIRM the district court's award of additional royalties from 1977 to 1980, including its denial to the plaintiffs of recovery in excess of the federally regulated price for gas produced and sold after December 1, 1978, concurring in its determination that the market value of gas produced after that date cannot exceed its federally regulated gas price.

(2) We REVERSE its grant to the defendant of judgment notwithstanding the

jury verdict for additional royalties due from 1973 to 1977, upon our finding that the evidence before the trial jury reasonably permitted it to find that the plaintiffs' endorsements of the royalty checks received by them from the defendant did not constitute an accord and satisfaction, and we REMAND in order that judgment may be entered for the plaintiffs for additional royalties therefore due them for gas produced and sold during that period, in accordance with the market value of the gas as determined by the jury upon special verdict, together with interest as prescribed by law; and

(3) We VACATE that portion of the district court's order that decreed that Shamrock was entitled to a deduction, as an offset for severance taxes, of the amount of 7.5% of the additional royalties for which it was held liable for gas produced and sold between 1977 and 1980, and we REMAND for further consideration and determination of that issue, in accordance with the views expressed above.

AFFIRMED IN PART, REVERSED AND VACATED IN PART, AND REMANDED.