MILTON M. COOKE CO. and Milton M. Cooke, Jr., Appellants

v.

FIRST BANK AND TRUST, Appellee.

No. 01–07–01000–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 9, 2009.

David W. Pace, Houston, TX, for Appellant.

Michael J. Smith, Chernosky, Smith, Ressling & Smith, PLLC, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and NUCHIA.*

## OPINION

SHERRY RADACK, Chief Justice.

Appellants, Milton M. Cooke Co. (Company) and Milton M. Cooke, Jr. (Cooke) (jointly, appellants), challenge a final judgment rendered in favor of appellee, First Bank and Trust (First Bank), on its suit to collect on two promissory notes.[1] Appellants responded to First Bank's lawsuit by asserting accord and satisfaction as an affirmative defense and counterclaims that included negligence, conversion, unjust enrichment, usury, and breach of contract. Trial was to the court on stipulated facts. The trial court's judgment awarded First Bank the outstanding balances due on two promissory notes, interest on the balances, and attorney's fees. In rendering judgment in favor of First Bank, the trial court impliedly rejected appellants' claim of accord and satisfaction and denied their counterclaims. Appellants present two sets of issues. In their first issue and its sub-issues, appellants ask that we render a take-nothing judgment in their favor because they established their accord and satisfaction affirmative defense as a matter

of law; their second and third issues alternatively challenge denial of their counterclaims. We affirm.

## Background

This lawsuit derives from two competing claims. First Bank's dispute derives from appellants' failure to pay obligations due to First Bank on two promissory notes. One note, in the principal amount of $150,000, secured an equipment loan; the second note, in the principal amount of $237,000, secured a boat loan constructed as a ship's mortgage.[2] Appellants' dispute derives from First Bank's having honored checks that Company bookkeeper, Marsha Riley, issued to herself from Company's operating account and from Cooke's personal account with First Bank.[3] Riley had been withdrawing funds to support a gambling habit for about 18 months when Company discovered the unauthorized checks. Estimates of the funds lost from her conduct ranged from $235,000 to $336,000. Riley was still working for Company, although with restricted responsibilities when this case went to trial.

First Bank refused to reimburse Company for the unauthorized checks, claiming that Company's late notice violated terms of its deposit agreement with First Bank. Among other terms, the agreement required that Company or Cook provide notice of unauthorized checks within 60 days of their being issued.[4]

---

* Justice Sam Nuchia, who retired from the First Court of Appeals on January 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on November 25, 2008.

1. Cooke is president of the Company and a guarantor of Company's notes.

2. Company also had other loans with First Bank. First Bank took security interests in Company's checking account as collateral for both notes.

3. Riley had either issued previously signed checks to herself or forged the signature of Cooke or his wife, who was an authorized drawer.

4. Appellants do not challenge the trial court's Conclusion of Law No. 16, which recites that Company and First Bank "varied by agreement the provisions of [section] 4.406(f) of the [Business and Commerce] Code." See TEX. BUS & COM.CODE ANN. § 4.406(f) (Vernon 2002) (requiring notice to bank of unauthorized signature "promptly," and, at a minimum, with-

After a series of written communications ensued concerning whether First Bank would reimburse appellants for Riley's unauthorized checks, Cooke devised a plan to offset the losses related to the unauthorized checks through Company's indebtedness to First Bank under the notes that secured the equipment and boat loans. Cooke warned First Bank then, both verbally, in speaking with a bank officer named Montenegro, and in writing, that he was considering "withholding all payments on all notes currently held by First Bank as offsets to the money owed to [Company]" for Riley's unauthorized checks unless First Bank deposited $235,000 in the Company account.[5] An attorney for First Bank explained to Cooke in writing the legal reasons why it would not accept the offset, and First Bank continued to refuse Company's requests to deposit the $235,000 in appellants' accounts.

In keeping with his warnings and objections to First Bank's failure to reimburse for Riley's unauthorized withdrawals, Cooke then issued two checks to First Bank. Each check was in the customary amount of the monthly payments on Company's notes for its equipment and boat loans. The amounts of the checks were $3,471.38, against an unpaid balance of $122,218.53 for the equipment loan, and $2,888.91, against an unpaid balance of $193,156.51 for the boat loan. Cooke submitted each of the checks to a First Bank teller, in keeping with his usual practice.

In contrast to his usual practice, however, Cooke added "payment in full" notations to those checks. Cooke testified that he added the notation to indicate that the respective, monthly payment amounts would fully satisfy all further Company obligations under the notes. An additional purpose was to "offset" Company's losses from the unauthorized checks written by Riley, for which appellants held First Bank liable. Cooke instructed the teller to whom he gave the "full payment" checks to give the checks directly to Montenegro, the bank officer whom Cooke had warned that he would proffer this "offset."

At trial, Cooke described appellants' strategy as "trying to have the bank enter into an accord and satisfaction" to compensate Company for losses arising from the unauthorized checks by Riley. After Cooke's proffer, Company took the position that it had no further obligation to First Bank on the notes and did not make any additional installment payments on the notes. This prompted First Bank to declare both notes in default and to accelerate them, in accordance with their terms, and to file this lawsuit.

In seeking declaratory relief on their affirmative defense of accord and satisfaction, appellants argued that their "payment in full" checks tendered to First Bank completely satisfied their obligations to First Bank under the equipment and boat loan notes. Neither side prevailed

in one year); *see also Cmty. Bank & Trust, S.S.B. v. Fleck*, 107 S.W.3d 541, 542 (Tex. 2002) (holding that bank and customer may agree to "a specific, shorter, reasonable period within which a customer must give notice," pursuant to section 4.103(a) of UCC) (citing Tex. Bus. & Com.Code Ann. § 4.103(a) (Vernon 2002) (authorizing variance of terms of UCC chapter 4 by agreement)); *Am. Airlines Employees Fed. Credit Union v. Martin*, 29 S.W.3d 86, 96 (Tex.2000) (stating that bank customer contractually bound by shortened 60–day notice period, regardless of whether customer read all provisions of bank signature card). Cooke testified at trial that he had never received First Bank's deposit agreement, but has not challenged the trial court's implied fact findings that reject that testimony.

5. Cooke explained that this amount resulted from a 30% reduction of the estimated $336,00 of unauthorized checks written by Riley.

on traditional and no-evidence motions for summary judgment, and the parties proceeded to trial based on stipulated facts derived from their respective proposed findings of fact. The trial court's judgment awarded First Bank damages in accordance with Company's and Cooke's outstanding obligations under the notes, accrued interest, and attorney's fees, and denied appellants relief on their counterclaims.

## Standard of Review—Legal Sufficiency

This case is before us on appeal from a bench trial after which the trial court filed extensive findings of fact and conclusions of law at appellants' request. The record includes the full reporter's record of the trial. Appellants' arguments in their principal brief do not clarify whether they challenge any of the trial court's findings of fact or whether they have asserted legal or factual sufficiency challenges. Their arguments and the relief requested by those arguments, however, consistently seek rendition in their favor, on the grounds that they proved their case as a matter of law. We thus construe their arguments as asserting legal-sufficiency or "no evidence" challenges. *See Vista Chevrolet, Inc. v. Lewis,* 709 S.W.2d 176 (Tex. 1986) (stating well-settled rule that "no evidence" points require rendition in favor of appealing party).[6]

In an appeal from a judgment after a bench trial, we accord the trial court's findings of fact the same weight as a jury's verdict. *See Brown v. Brown,* 236 S.W.3d 343, 347 (Tex.App.-Houston [1st Dist.] 2007, no pet.). When, as here, the record includes a complete reporter's record, the trial court's findings of fact are subject to sufficiency challenges under the same standards we apply to address the sufficiency of the evidence to support a jury's answer. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Brown,* 236 S.W.3d at 348.

Thus, to determine whether legally sufficient evidence supports a challenged finding, we must consider evidence that favors the finding if a reasonable fact-finder could consider it, and we must disregard evidence contrary to the challenged finding unless a reasonable fact-finder could not disregard it. *See City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). This Court may not sustain a legal insufficiency, or "no evidence" point unless the record demonstrates (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.,* 168 S.W.3d at 810.

We review conclusions of law by the trial court de novo and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *Brown,* 236 S.W.3d at 348. The trial court's conclusions of law are not subject to challenge for lack of factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *Id.*

---

**6.** We note that appellant's reply brief asserts new, late-filed challenges to certain of the trial court's findings of fact. These challenges address the "great weight and preponderance" of the evidence and thus purport to seek a remand for a new trial. *See generally Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). Yet, appellants nonetheless continue their contentions that they proved their case as a matter of law and seek rendition in their favor. Despite appellants' phrasing of these late challenges, therefore, we conclude that they have not altered the legal-sufficiency challenges in their principal brief.

■ Appellate review in Texas proceeds by analysis of issues presented or points of error. *See* Tex.R.App. P. 38.1(f). Except in cases of fundamental error, neither claimed or at issue here, we may not reverse a lower court's judgment without an assignment of error, whether by issues or points. *See Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993); *see generally* 6 Roy W. McDonald & Elaine Grafton Carlson, *Texas Civil Practice* § 38:3, 1025 (2d ed. 1998). We are thus prohibited from altering even an erroneous judgment in a civil case without a challenge to the error on appeal. *See Walling,* 863 S.W.2d at 58; *Britton v. Texas Dept. of Criminal Justice,* 95 S.W.3d 676, 680 (Tex.App.-Houston [1st Dist.] 2007).

■ As applied to this appeal from a bench trial in which the trial court has filed findings of facts and conclusions of law, the requirement to challenge error on appeal compels that an unchallenged finding of fact is binding on an appellate court unless (1) the contrary finding is established as a matter of law, or (2) no evidence supports the finding. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986) (stating rule); *see also Republic Underwriters Ins. Co. v. Mex–Tex, Inc.,* 150 S.W.3d 423, 426–27 (Tex.2004) ("We must, of course, accept this finding if there is any evidence to support it," but concluding, on applying rule, that evidence relied on did not support trial-court finding). Under the same rationale, we will overrule a challenge to fact findings that form the basis of a conclusion of law or disposition when the appellant does not challenge other fact findings that support that conclusion or disposition. *See Britton,* 95 S.W.3d at 682 (citing *In the Matter of L.R.,* 67 S.W.3d 332, 339 (Tex.App.-El Paso 2001, no pet.)).

## Accord and Satisfaction

In their first issue and its six sub-issues, appellants contend they established their affirmative defense of accord and satisfaction as a matter of law, and they challenge the trial court's contrary conclusion. Appellants focus on the UCC, but the defense invokes other principles as well. Appellants further contend that this appeal compels that we decide whether an offsetting obligation, here the Bank's alleged obligation to refund the funds represented by Riley's unauthorized checks, can form the basis of an accord and satisfaction. We need not reach that issue, however, because appellants did not establish that an accord and satisfaction resulted from their "full satisfaction" tender.

### A. Common Law, UCC § 3.311, and Contract

Appellants rely on the defense of accord and satisfaction as codified by the Legislature in adopting Article 3 of the Uniform Commercial Code (UCC). *See* Tex. Bus. & Com.Code Ann. § 3.311 (Vernon 2002). In sub-issue six, appellants argue that the trial court disregarded section 3.311 and erred by relying instead on common-law principles in rejecting appellants' contentions. Appellants maintain that UCC section 3.311 compels a ruling in their favor. First Bank disagrees and counters that provisions of its agreements with appellants are dispositive of their claims. Accordingly, we first address the legal principles that control this controversy before analyzing appellants' issues.

### 1. Common Law

■ Common-law principles define the defense of accord and satisfaction as premised on a contract, express or implied, in which the parties agree to discharge an existing obligation by means of a lesser payment that is tendered and accepted. *Lopez v. Munoz, Hockema & Reed, L.L.P.,*

22 S.W.3d 857, 863 (Tex.2000) (citing *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969)); *see Indus. Life Ins. v. Finley*, 382 S.W.2d 100, 104 (Tex.1964) (describing agreement contemplated as "a new contract").

■ To prevail under the common law on their affirmative defense that an accord and satisfaction barred First Bank's claims for the accelerated balances due on appellants' loans, appellants had to produce (1) evidence establishing a dispute between them and First Bank and (2) evidence establishing that they and First Bank specifically and intentionally agreed to discharge appellants' obligations. *See Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d at 863. Well-settled law recognizes that the parties' dispute provides the consideration for the ensuing agreement. *Indus. Life Ins.*, 382 S.W.2d at 104; *see Hycarbex, Inc. v. Anglo–Suisse, Inc.*, 927 S.W.2d 103, 110 (Tex.App.-Houston [14th Dist.] 1996, no writ) ("[T]he very existence of the dispute is the consideration for the accord and satisfaction.") (citing *Dickson v. Stockman*, 411 S.W.2d 610, 613 (Tex.Civ.App.-Texarkana 1966, writ ref'd n.r.e.)).

### 2. *Uniform Commercial Code*

Section 3.311 of Article 3 of the UCC contains a detailed provision regarding accord and satisfaction. Pursuant to section 3.311(a)-(b), a claim "is discharged" if the "person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered in full satisfaction of the claim" and

(1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim;

(2) the amount of the claim was unliquidated or subject to a bona fide dispute; and

(3) the claimant obtained payment of the instrument.

TEX. BUS. & COM.CODE ANN. § 3.311(a)-(b) (Vernon 2002).[7]

■ But section 3.311 does not conflict with the common-law doctrine of accord and satisfaction, as appellants contend in sub-issue six; rather, the statute is consistent with the doctrine as interpreted by Texas courts. *Case Funding Network, L.P. v. Anglo–Dutch Petroleum Intern., Inc.* 264 S.W.3d 38, 50 (Tex.App.-Houston [1st Dist.] 2007, pet. denied); *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 679–80 (Tex.App.-Fort Worth 1998, pet. denied); *see* TEX. BUS. & COM.CODE ANN. § 3.311, cmt. 3 ("Section 3–311 is based on a belief that the common law rule produces a fair result and that informal dispute resolution by full satisfaction checks should be encouraged.").

### 3. *Variance by Agreement*

■ Like the common law, however, the UCC recognizes freedom of contract and specifies that parties may vary "the effect" of UCC provisions by agreement, except as proscribed by the Code. *See* TEX. BUS. & COM.CODE ANN. § 1.302(a) (Vernon Supp. 2008);[8] *see World Help*, 977 S.W.2d

---

**7.** Section 3.311(b) provides an exception for "organizations," like First Bank here, who assert a claim. TEX. BUS. & COM.CODE ANN. 3.311(c) (Vernon 2002). We address this exception below.

**8.** For example, the obligations of good faith, diligence, reasonableness, and care mandated by the UCC may not be disclaimed by agreement. *See* TEX. BUS & COM.CODE ANN. § 1.302(b); *see also id.*, cmt. 1 (delineating additional matters, encompassed by specific UCC terms that may not be altered by agreement, though parties may alter legal consequences that would otherwise flow from UCC provisions; further recognizing that other UCC provisions may restrict freedom of contract, but that "the general and residual rule

at 679 (citing former TEX. BUS. & COM.CODE ANN. § 1.102 cmt. 2 ("But an agreement can change the legal consequences [that] would otherwise flow from the provisions of the Act.")); *see also Jon–T Chems., Inc. v. Freeport Chem. Co.,* 704 F.2d 1412, 1416 (5th Cir.1983) (holding that UCC provisions do not control over contractual provisions); *see also Lenape Res. Corp. v. Tenn. Gas Pipeline,* 925 S.W.2d 565, 570 (Tex.1996) (same; referring to UCC Article 2 provisions as "gap-filler [that] may be varied by the parties' agreement").

 Regarding accord and satisfaction, therefore, the common law and the UCC do not conflict, but, rather, converge, and parties may vary both by agreement.

## B. Accord and Satisfaction, as Claimed by Appellants, Barred by Agreement

 Under the parties' stipulated facts filed in the trial court, neither Cooke nor Company denied under oath the terms of the equipment and boat notes under oath. *See* TEX.R. CIV. P. 93(7) ("In the absence of such a sworn plea, the instrument shall be received in evidence as fully proved."). By Conclusion of Law No. 18, the trial court ruled that Company "agreed under the terms of [the notes] not to deliver the Full Satisfaction Checks to First Bank except in a specified manner, which they did not follow." Finding of Fact No. 31 recites that each of the notes contained the following provisions:

> Borrower agrees not to send Lender payments marked *paid in full, without recourse,* or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and

Borrower will remain obligated to pay any further amounts owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes *payment in full* of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn. Payment Processing, P.O. Box 790269 St. Louise, MO 63179–0269.

(Emphasis in original.) Appellants do not challenge either the conclusion or its supporting findings. Cooke acknowledged these terms at trial and conceded that he did not mail or deliver the "full satisfaction" checks in the method described and instead gave them to a teller.[9]

Appellants focus instead on First Bank's challenge to appellants' claim that they were discharged of any further obligation on the notes by accord and satisfaction. Because of First Bank's challenge, appellants argue in their first sub-issue that UCC section 3.311(c) imposed a burden on First Bank to establish an exception to appellants' affirmative defense. Specifically, appellants rely on section 3.311(c)(1), which states that "a claim is not discharged" by the accord and satisfaction recognized by section 3.311(b) if

(1) The claimant, if an organization, proves that:

(A) within a reasonable time before the tender, the claimant sent a conspicuous statement to the person against whom the claim is asserted that communications concerning disputed debts, including an instrument tendered as full

---

is that all provisions of the [UCC] may be varied by agreement").

**9.** In addition, Cooke testified at trial that he found the terms were "confusing." Now, for the first time on appeal, appellants contend that the terms are "ambiguous." We reject this contention, on the grounds that it was not preserved. *See* TEX R.APP. P. 33.1(a).

satisfaction of a debt, are to be sent to a designated person, office, or place; and

(B) the instrument or accompanying communication was not received by that designated person, office, or place.

TEX. BUS. & COM.CODE ANN. § 3.311(c)(1)(A)-(B).

Appellants contend they (1) have no further obligations under their notes, which, appellants contend, (2) have been fully "discharged" under section 3.311(a)-(b), because (3) First Bank accepted appellants' "full satisfaction" payments. Appellants further contend that (4) First Bank cannot rely on terms in the notes that designate a specific address for "payment in full" checks because the terms are not "conspicuous," as section 3.311(c)(1)(A) requires.

### 1. *Section 3.311(c) Does Not Apply*

■ Section 3.311(c) does not apply to this case. The accord and satisfaction provisions of the statute, sections 3.311(b)-(d), will apply in favor of "a person *against whom a claim is asserted.*" *See* TEX. BUS. & COM.CODE ANN. § 3.311(a) (emphasis added).[10] The statute thus contemplates that an accord and satisfaction established under the remainder of section 3.311(a) and section 3.311(b) discharges an *existing claim* against a party, who later invokes accord and satisfaction as an affirmative

defense to that claim. *See* TEX. BUS. & COM.CODE ANN. § 3.311(a)-(b).

First Bank had no existing claim against appellants when they proffered the "full satisfaction" checks on their continuing obligations under their equipment and boat loans. There was no claim under those contractual obligations because it is undisputed that appellants' note payments were current. As appellants concede in their reply brief, their dispute did not arise from those loans. The only claim was not by First Bank, but by appellants against First Bank, and this dispute concerned the unauthorized checks by Riley. By definition, that claim is not a claim asserted against appellants, but a claim asserted by them.

Similarly, section 3.311(c) applies to a "statement" that has been "sent" by the claimant, in this case, First Bank, in advance of the tender by the party who claims an accord and satisfaction, in this case, appellants, through Cooke. *See* TEX. BUS. & COM.CODE ANN. § 3.311(c). As applied to the context of a bank claimant and its customer, Section 3.311(c) thus contemplates a dispute over a debt of a customer that results in a notice, sent by the bank to the customer. *See id.* The notice instructs that any "full-satisfaction" payments regarding the existing dispute are

---

10. Section 3.311, "Accord and Satisfaction by Use of Instrument," provides in part as follows:

(a) Subsections (b)-(d) apply if a person against whom a claim is asserted proves that:

(1) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim;

(2) the amount of the claim was unliquidated or subject to a bona fide dispute; and

(3) the claimant obtained payment of the instrument.

(b) Unless Subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

. . . .

(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.

TEX. BUS. & COM.CODE ANN. § 3.311 (Vernon 2002).

to be sent to a specifically "designated person, office, or place." *See id.* In the absence of an existing dispute, there was no reason for First Bank to send a notice.

First Bank had no existing claim against appellants and thus had no "dispute" with appellants that would have triggered the "conspicuous" notice contemplated by section 3.311(c). A "dispute" under section 3.311(c) must be as to the "claim." *Vaughn Excavating and Constr., Inc. v. Centergas Fuels, Inc.,* 223 S.W.3d 591, 592 (Tex.App.-Amarillo 2007, no pet.); *Klemp Corp. v. Thompson,* 402 S.W.2d 257, 261 (Tex.Civ.App.-Waco 1966, no writ). Monthly payments due under both the equipment and boat notes were liquidated, certain, and, in this case, undisputed.

Though appellants had a dispute with First Bank, First Bank had no dispute with appellant on which a section 3.311(c) "claim" could be based—until appellants attempted their "full satisfaction" tender of their debt obligations under the equipment and boat loans to resolve appellants' dispute with First Bank regarding the Riley forgery. The terms of section 3.311(c)(1)(A) preclude its application to that dispute, because the statute further contemplates a dispute that predates the debtor's tender. *See* TEX. BUS. & COM.CODE ANN. § 3.311(c)(1)(A) ("within a reasonable time *before* the tender") (emphasis added). First Bank had no dispute with appellants until after their tender, which rendered moot any compliance with section 3.311(c)(1). *See id.; see also* TEX. BUS. & COM.CODE ANN. § 3.311 cmt. 4 (stating that section 3.311 does not apply to a liquidated amount not subject to a bona fide dispute); *Vaughn Excavating & Constr., Inc.,* 223 S.W.3d at 592 (citing TEX. BUS. & COM.CODE ANN. § 3.311 cmt. 4).

### 2. *Terms of Notes Control*

█ Most importantly, the record conclusively establishes a prior agreement be-

tween appellants, as authorized by the UCC and addressed above. *See* TEX. BUS. & COM.CODE ANN. § 1.302(a) (authorizing variance of effect of UCC by agreement). This agreement negated any need for First Bank to issue section 3.311(c) notices, even if a "dispute" contemplated by that section applied. Through Cooke, as signatory and guarantor of both the equipment and the boat loans, appellants had agreed, from the inception of the self-proved notes that secured both loans, that any prepayment of outstanding loan balances by "payment in full" had to be sent to a specified office, as follows:

> All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes *payment in full* of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: First Bank, Attn. Payment Processing, P.O. Box 790269 St. Louise, MO 63179–0269.

Because appellants were contractually bound to these notice provisions, all of which were specified in the notes securing their equipment and boat loans, First Bank had no duty to establish an exception under UCC section 3.311(c), through a "conspicuous" notice to appellants.

Therefore, we hold that legally sufficient evidence, in the form of the stipulated facts on which this case was tried, the self-proving terms of the notes securing equipment and boat loans, and Cooke's trial testimony, establishes that appellants breached the agreed terms of those notes by attempting to resolve the dispute concerning Riley's unauthorized checks by submitting the "full satisfaction" checks to First Bank in violation of the express prohibitions of the notes.

We overrule appellants' first and sixth sub-issues.

## C. Appellants' Tender Not Conditioned on Release by First Bank

In Conclusion of Law No. 18, the trial court ruled that appellants did not prove the existence of an accord and satisfaction. In Conclusion of Law No. 24, the trial court ruled that First Bank did not release appellants. Appellants' second and third sub-issues encompass contentions that appellants conclusively established that First Bank had actual knowledge, as required by the UCC, that acceptance of appellants' "full satisfaction" checks would constitute an accord and satisfaction of appellants' outstanding obligations for the notes.

■■ Before addressing this sub-issue, we re-emphasize yet again that there was no "dispute" regarding appellants' obligations under the notes and no "claim" by First Bank regarding those obligations. There was only a claim by appellants regarding Riley's unauthorized checks and a dispute regarding that claim. But even if appellants could effect an accord and satisfaction of that dispute by their "full satisfaction" checks—an issue that we do not decide—there is no evidence, and thus legally insufficient evidence, that their "full satisfaction" tender was conditioned on First Bank's release of the remaining balances on appellants' notes securing their equipment and boat loans.

Appellants' reply brief includes a late-asserted challenge to the trial court's Finding of Fact No. 33, which states, "The Court finds no evidence of an *unmistakable communication* to First Bank that the Defendants' tender of the Full Satisfaction Checks to a teller *was conditioned upon* the Bank's acceptance in full satisfaction of the remaining balance of [the notes securing the equipment and boat loans]." (Emphasis added.) Even if appellants had

timely asserted this challenge in their principal brief, we would be required to reject its premise, specifically, that the notation "payment in full" on the checks amounted to a tender conditioned on acceptance by First Bank. The same is true of appellants' late-asserted challenge to Finding of Fact No. 40, which states,

> The Court finds no evidence of (a) First Bank's acceptance of an offer, (b) any *meeting of the minds* between [appellants] and First Bank as to any terms of a release, (c) each party's consent to the terms, and (d) execution and delivery of a release contract with the intent that it be binding. (Emphasis added.)

We note at the outset that appellants mistakenly premise their challenges on the contention that an "honest belief" that First Bank "was liable to some degree for payment of [Riley's] forged checks" is sufficient to "impute" knowledge to First Bank that acceptance of the "full satisfaction" checks would result in an accord and satisfaction of appellants' remaining indebtedness on the notes securing appellants' equipment and boat loans.

Appellants claim support for this premise in *H.L. "Brownie" Choate, Inc. v. Southland Drilling Co.*, 441 S.W.2d 672, 676 (Tex.Civ.App.-San Antonio), *rev'd,* 447 S.W.2d 676 (Tex.1969). But the appellate court's discussion focuses on the nature of the underlying dispute and addresses the element of good faith in that context. *See id.*, 441 S.W.2d at 676. We have held that there was no dispute in this case, until First Bank sought the remaining balance due on appellants' loans, and, thus, no legitimate dispute, for purposes of accord and satisfaction. *See Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d at 863 (noting that accord and satisfaction requires "legitimate" dispute).

Most importantly, the supreme court reversed the *H.L. "Brownie" Choate* decision and held that no accord and satisfaction had occurred because there was no evidence that debtor's check was tendered on condition that acceptance would constitute full satisfaction of disputed amount. *See H.L. "Brownie" Choate, Inc.*, 447 S.W.2d 676, 680 (Tex.1969). The requirement that tender be conditioned on acceptance is well-settled under both the common law and the UCC.

In *Republic Underwriters Ins. Co. v. Mex–Tex, Inc.*, 150 S.W.3d 423 (Tex.2004), the supreme court construed the law of accord and satisfaction in the context of a dispute between an insurance carrier and its insured. Rejecting the insured's claim, as well as the trial court's express finding, that the insurer's tender was an attempt " 'to enforce a full and final release of [the claim] when only a partial payment had been made,' " the court held that no evidence demonstrated "any clear intent by [Republic] to condition its tender on a full release of Mex–Tex's claim." *Id.* In reaching this conclusion, the court invoked the well-settled rule that follows:

> The evidence must establish *an assent of the parties* to an agreement that the amount paid by the debtor to the creditor was in full satisfaction of the entire claim. *The minds must meet* and where resting in implication the facts proved must irresistibly point to such conclusion. There must be an *unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation.* It has been said that the conditions must be made plain, definite and certain; that the statement accompanying the tender of a sum less than the contract price must be so clear, full and explicit that it is not susceptible of any other interpretation; that the offer must be accompa-

nied with acts and declarations which the creditor is "bound to understand."

*Republic Underwriters Ins. Co.*, 150 S.W.3d at 427 (quoting *Jenkins*, 449 S.W.2d at 455; *Indus. Life Ins. Co.*, 382 S.W.2d at 104) (stating that parties' "minds must meet") (citing *Ortiz Oil Co. v. Geyer*, 138 Tex. 373, 159 S.W.2d 494, 497 (1942) (citing *Simms Oil Co. v. Am. Refining Co.*, 288 S.W. 163, 164) (Tex. Comm'n.App.1926)); *see Case Funding Network, L.P.*, 264 S.W.3d at 50 (citing *Jenkins*, 449 S.W.2d at 455; *Hycarbex, Inc.*, 927 S.W.2d at 108); *compare H.L. "Brownie" Choate, Inc.*, 447 S.W.2d at 679 (holding that no evidence showed that debtor's check was tendered on condition that acceptance would constitute full satisfaction of disputed amount) *with Indus. Life Ins. Co.*, 382 S.W.2d at 106 (holding that accord and satisfaction established based on absence of evidence that payment tendered was partial, accepted tender of check bearing detailed notation indicating receipt as "full and final payment of all money due as contingent commission" under specifically referenced agreement, and accompanying, extensively detailed transmittal letter to same effect).

Section 3.311(d) of the UCC incorporates the common-law requirement that both parties understand that tender of the lesser sum is conditioned on acceptance of that sum as full satisfaction. Section 3.311(d) states,

> A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, *the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim.*

TEX. BUS. & COM.CODE ANN. § 3.311(d) (emphasis added).

Comment 7 to UCC section 3.311 clarifies that the knowledge required by First Bank or an agent of First Bank is "actual knowledge"; mere notice is not sufficient. *See* TEX. BUS. & COM.CODE ANN. § 3.311 cmt. 7; *accord, Republic Underwriters Ins. Co.,* 150 S.W.3d at 427; *Christian v. Univ. Fed. Sav. Ass'n,* 792 S.W.2d 533, 534 (Tex.App.-Houston [1st Dist.] 1990, no writ) (citing *Jenkins,* 449 S.W.2d at 455) (all stating that communication that acceptance of the lesser sum will satisfy underlying obligation must be "unmistakable").

To know that appellants' checks were "tendered in full satisfaction of a claim"—had there been a claim, a contention that we rejected above—or as full satisfaction of the outstanding obligations on their notes, First Bank had to have "actual knowledge of that fact." *See* TEX. BUS. & COM.CODE ANN. § 3.311 cmt. 7 (quoting TEX. BUS. & COM.CODE ANN. § 1.201(b)(25)). As an "organization," First Bank would have "actual knowledge" that a check was tendered in full satisfaction of a claim if "that fact" had been "brought to the attention of the individual conducting that transaction, and in any event it would have been brought to his attention had the organization exercised due diligence." *See id.* (quoting TEX. BUS. & COM.CODE ANN. § 1.201(b)(27)).

In sub-issues two and four, Appellants contend that First Bank had actual knowledge for the following reasons:

- Ms. Montenegro was an officer at First Bank and Company's "primary contact" at the First Bank office where Company did business;
- Montenegro dealt with Company concerning its dispute regarding Riley's unauthorized checks;
- Cooke "warned" Montenegro that Company would attempt a setoff to rectify funds Company lost by Riley's unauthorized checks

- Montenegro sometimes worked as a teller and may have supervised the tellers when Cooke tendered the "full satisfaction" checks;
- Cooke tendered the checks bearing the "full satisfaction" notations to a teller and instructed the teller to direct the checks to Montenegro's attention.
- First Bank later struck through the "full satisfaction" notations.
- The stipulated facts show that First Bank accepted the checks, endorsed them, received the funds, and retained the funds.

As First Bank emphasized in its reply brief, however, appellants have not challenged the following findings by the trial court:

15. Cooke delivered the Full Satisfaction Checks to First Bank tellers in the same manner in which he normally paid monthly installments under the Notes.

16. [Appellants] failed to bring to the First Bank tellers' attention that the Full Satisfaction Checks were being tendered in full satisfaction of the obligations of the Notes.

17. [Appellants] did not deliver the Full Satisfaction Checks to a person at First Bank with knowledge of the forgery dispute . . . and the apparent or ostensible authority to accept or reject the accord being offered by the delivery of the Full Satisfaction Checks.

These findings are binding on this Court unless contrary findings are established as a matter of law or no evidence supports them. *See Republic Underwriters Ins. Co.,* 150 S.W.3d at 426; *McGalliard,* 722 S.W.2d at 696.

Though Montenegro was Company's "primary contact" for Company business, and though appellants "dealt with" her regarding Riley's forgeries, nothing in the record establishes, to a degree that a rational jury could have reasonably found, *see City of Keller,* 168 S.W.3d at 827, that Montenegro had "the apparent or ostensible authority to accept or reject the accord being offered by the delivery of the Full Satisfaction Checks." *See* TEX. BUS. & COM. CODE ANN. § 3.311 cmt. 7 (quoting TEX. BUS. & COM.CODE ANN. § 1.201(b)(25)).

Regarding the trial court Findings 15 and 16, we note further that the record shows that an attorney for First Bank responded to Cooke's written "warning" that appellants would withhold payments on their equipment and boat note obligations unless $235,000 were refunded for Riley's forgeries. The record also shows that Cooke had corresponded with another officer of First Bank concerning that controversy. Though the record does not establish that either of these individuals had the requisite authority to accept or reject appellants' tender of the "full satisfaction" checks, it is undisputed that the checks were not sent to either of these individuals. Instead, Cooke delivered them to a teller. For purposes of section 3.311(d),

> "[I]t is irrelevant whether the clerk processing the check did or did not see the statement that the check was tendered as full satisfaction. Knowledge of the clerk is not imputed to the organization because the clerk has no responsibility with respect to an accord and satisfaction. Moreover, there is no failure of 'due diligence' under Section 1.201(b)(27) if the claimant does not require its clerks to look for full satisfaction statements on checks or accompanying communications. Nor is there any duty of

the claimant to assign that duty to its clerks."

TEX. BUS. & COM.CODE ANN. § 3.311 cmt. 7.

Appellants have not met their burden on appeal to demonstrate that no evidence supports the trial court's unchallenged Findings of Fact Nos. 15–17, or that the evidence conclusively establishes contrary findings. *See Republic Underwriters Ins. Co.,* 150 S.W.3d at 426, 427; *McGalliard,* 722 S.W.2d at 696. These findings, in turn, support the trial court's Conclusions of Law Nos. 19 and 24, in which the trial court ruled that no accord and satisfaction resulted from the "full satisfaction" checks and that First Bank did not release appellants, in an "unmistakable," conditioned-on-acceptance manner sufficient to confer the actual knowledge required by both UCC section 3.311(d) and the common law. *See* TEX. BUS. & COM.CODE ANN. § 3.311(d) & cmt. 7; *Republic Underwriters Ins. Co.,* 150 S.W.3d at 427; *Christian,* 792 S.W.2d at 534 (citing *Jenkins,* 449 S.W.2d at 455). As a reviewing court exercising proper legal-sufficiency review, this Court cannot say that a rational jury could have reasonably found that the "full satisfaction" checks tendered by Cooke met these requirements.

Because appellants did not establish a tender conditioned on receipt by First Bank, appellants failed to establish a critical element of their affirmative defense of accord and satisfaction under the controlling law. Accordingly, we need not address the remaining sub-issues of their first issue, which are directed to other elements of that affirmative defense.

We overrule appellants' first issue.

Having concluded that the trial court properly rendered judgment in favor of First Bank on the grounds that appellants failed to establish accord and satisfaction as an affirmative defense to First Bank's claims for the outstanding balances due on

appellants' equipment and boat loans, we need not address appellants' remaining issues, which challenge denial of their counterclaims.

### Conclusion

We affirm the judgment of the trial court.