

## Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00517-CV

Victor Jimenez **MORENO** and Lidia C. Moreno,
Appellants

v.

**LGAG REALTY PARTNERS, LLC**,
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-07564
Honorable David A. Canales, Judge Presiding

Opinion by:   Sandee Bryan Marion, Chief Justice

Sitting:   Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Liza Rodriguez, Justice

Delivered and Filed: August 19, 2020

AFFIRMED

Appellants Victor and Lidia Moreno appeal a final judgment ordering specific performance

of a real estate purchase agreement. We affirm the trial court's judgment.

### Background

The Morenos purchased real property in San Antonio from Elpidio Medelez. The purchase

was financed with a $725,000 note payable to Medelez in monthly installments, as well as a deed

of trust in Medelez's favor.

After falling behind in monthly note payments, the Morenos sought a loan from appellee LGAG Realty Partners, LLC. LGAG proposed to purchase the property from the Morenos instead. In February 2018, the Morenos and LGAG executed a purchase agreement whereby the Morenos agreed to sell the property to LGAG for $830,000 due in cash at closing. The purchase price represented the total amount owed under the Medelez note, plus up to a $105,000 profit to the Morenos.[1] Shortly after executing the purchase agreement, however, the Morenos informed LGAG they did not want to sell the property for the agreed amount.

Still intending to close the deal, LGAG contacted Medelez to seek assurances that he would not attempt to foreclose on the note before the purchase agreement closed. LGAG offered to pay down the note, but Medelez stated he preferred to continue receiving monthly payments. So, on April 5, 2018, Medelez and LGAG's representative signed an agreement whereby Medelez would "allow Adrian Gracia of LGAG Realty Partners, LLC to assume" the note and continue making monthly payments on it. LGAG did not inform the Morenos of the assumption agreement with Medelez.

On April 13, 2018, LGAG's representative attended the scheduled closing with a cashier's check for $165,000, which he believed would be sufficient to close if the Morenos agreed to allow LGAG to assume the Medelez note. The LGAG representative testified he nevertheless had access to $830,000 cash if LGAG did not assume the Morenos' note. The Morenos did not attend the closing, and neither the purchase agreement nor the assumption agreement closed.

LGAG brought suit against the Morenos for breach and repudiation of the purchase agreement. Pursuant to an express provision of the purchase agreement authorizing LGAG to seek specific performance in the event of the Morenos' default, LGAG sought a judgment ordering the

---

[1] The purchase agreement states: "[The Morenos] to receive a maximum of $105,000 from the net closing proceeds. Any excess of net closing proceeds above $105,000 will be credited back to [LGAG]."

Morenos to "prepare and execute a Deed and any other documents necessary or convenient to closing on the purchase and sale of the Property and otherwise comply with the [purchase agreement] and cooperate with LGAG, the title company, and any other persons involved, in completing the purchase and sale of the Property."

Following a bench trial, the trial court granted judgment in favor of LGAG ordering the Morenos to prepare and execute a deed to the property and "otherwise comply with the [purchase agreement]." Upon the Morenos' request, the trial court additionally made the following pertinent findings of fact:

> . . . LGAG and [the Morenos] entered into a Commercial Contract – Improved Property ("the Contract") . . . .
>
> The Contract stated a sales price of $830,000.00 for the Property, up to $105,000.00 of which would be paid to [the Morenos] . . . .
>
> . . . If the [Medelez] note were assumed instead of paid, this would not change the amount that [the Morenos] would receive; however, LGAG was willing to pay cash for the Property as originally agreed, and never refused to do so. . . .
>
> LGAG was ready, willing, and able to close on the closing date, and remains ready, willing, and able to close under the terms of the Contract. . . .
>
> Within days after the Contract was signed, [the Morenos] decided that they wanted more money for the Property and that as a result . . . they would not honor the Contract. [The Morenos] then refused to further communicate and cooperate with LGAG or the title company.

The Morenos appeal.

## Standard of Review

In seven related issues, the Morenos challenge the legal and factual sufficiency of the evidence supporting the trial court's judgment. In an appeal from a bench trial, we give the trial court's findings of fact the same weight as a jury's verdict. *TLC Hospitality, LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 758 (Tex. App.—Tyler 2018, pet. denied) (citing *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 302 (Tex. App.—Houston [1st Dist.] 2009, no

pet.)). Accordingly, when the appellant challenges the trial court's findings, we review them using the same standards we use to review the sufficiency of the evidence supporting a jury's findings. *Id.* at 758–59 (citing *Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex. App.—Dallas 2006, pet. denied)).

When reviewing the legal sufficiency of the evidence, we consider evidence that favors the challenged finding if a reasonable factfinder could, and we disregard evidence contrary to the finding unless a reasonable factfinder could not. *Id.* at 759 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We will not sustain a legal insufficiency challenge unless the record demonstrates: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* (citing *Wilson*, 168 S.W.3d at 810).

When reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence. *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). We will not sustain a factual sufficiency challenge unless the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong or unjust. *Id.*

## Discussion

The essence of the Morenos' arguments on appeal is that LGAG is not entitled to specific performance of the purchase agreement because LGAG "unilaterally and without the knowledge or consent of [the Morenos], altered the contract's terms for payment" by negotiating an assumption agreement with Medelez. The Morenos emphasize the evidence that LGAG instructed the title company to prepare closing documents for a deal they did not and would not have agreed to—*i.e.*, a deal in which LGAG would assume the Morenos' note rather than pay the Morenos $830,000 cash at closing as required by the purchase agreement.

Specific performance is an equitable remedy for breach of contract awardable at the trial court's discretion. *Id.* at 768 (citing *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 571 (Tex. App.—Fort Worth 2008, pet. denied)). The plaintiff seeking specific performance must plead and prove it was ready, willing, and able to timely perform its obligations under the contract. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 593 (Tex. 2008). As a general rule, the plaintiff must actually tender performance as a prerequisite to being entitled to specific performance. *Id.* at 594. When the defendant refuses to perform or repudiates the contract, however, the plaintiff is excused from actually tendering performance before filing suit. *Id.* In such a case, the plaintiff need only plead that performance would have been tendered but for the defendant's breach or repudiation. *Id.* To repudiate the contract, the defendant must have absolutely and unconditionally refused to perform without just excuse. *El Paso Prod. Co. v. Valence Operating Co.*, 112 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Here, LGAG presented evidence that shortly after signing the purchase agreement, the Morenos told LGAG they did not intend to perform. LGAG partner Luis Garza testified that a week or two after the purchase agreement was signed and well before the April 13, 2019 closing date, Victor Moreno told him he did not want to sell the property because he thought he deserved more money. Moreno denied having this conversation with Garza but admitted that two or three days after signing the purchase agreement, he and his wife decided they would not show up to the closing. There is no dispute the Morenos eventually stopped communicating with LGAG and refused to communicate with the title company except to inform a title company representative that they would not appear on April 13, 2019. Therefore, we conclude there is sufficient evidence in the record to support the trial court's finding:

> Within days after the Contract was signed, [the Morenos] decided that they wanted more money for the Property and that as a result . . . they would not honor the

Contract. [The Morenos] then refused to further communicate and cooperate with LGAG or the title company.

Courts have held similar conduct is sufficient to excuse performance on the part of a plaintiff seeking specific performance of a contract. For instance, in *Chapman v. Olbrich*, the plaintiff was excused from tendering performance under a contract to purchase real property after the defendant told him "[t]he contract is over" and she intended to sell the property to someone else. 217 S.W.3d 482, 486, 492 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Similarly, in *Brantley v. Etter*, this court held the plaintiff "did all the contract required him to do" by appearing at closing with his checkbook after the defendant's attorney wrote him a letter stating his client "no longer wished to consummate the sale." 662 S.W.2d 752, 754, 758 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.). *See also 17090 Parkway Ltd. v. McDavid*, 80 S.W.3d 252, 257 (Tex. App.—Dallas 2002, pet. denied) (holding trial court's findings that defendant "openly refused to perform its part of the contract" and plaintiff was "ready, willing, and able to perform his obligations under the purchase contract" were sufficient to support award of specific performance).

Therefore, in light of the trial court's finding that the Morenos failed and refused to perform their end of the bargain, we agree with the trial court's conclusion that "LGAG was not required to tender the purchase price on the closing date." *See DiGiuseppe*, 269 S.W.3d at 594. LGAG nevertheless pleaded and presented evidence it was "ready, willing, and able" to perform under the terms of the purchase agreement. Luis Garza testified he had at least $830,000 in cash funds that he was ready, willing, and able to deliver to the Morenos on the date the purchase agreement was signed, the date of the closing, and the date of trial. The Morenos respond that Garza did not have the cash *in hand* at the April 13, 2019 closing and testified it would have taken approximately twenty-four hours for the funds to be wired from the bank. But LGAG was not required to actually

tender performance on the closing date in light of the Morenos' prior repudiation. *See id.* It is sufficient that LGAG pleaded and proved it was ready, willing, and able to perform as agreed.

The Morenos also argue LGAG was only ready, willing, and able to perform an alternative agreement, or that LGAG also breached and repudiated the purchase agreement by "unilaterally alter[ing] the [purchase agreement's] terms for payment." Indeed, the evidence is undisputed that Medelez agreed to allow LGAG to assume the Morenos' note, and LGAG intended to propose to the Morenos at closing that LGAG assume the note and pay the Morenos the cash difference between the $830,000 contract value and the amount due under the note. But while LGAG intended to propose an alternative to the purchase agreement's payment terms, there is no evidence LGAG insisted the Morenos agree to that alternative. In fact, the evidence is undisputed the Morenos did not know about the assumption agreement until after LGAG filed suit.

Importantly, LGAG did not sue to enforce the assumption agreement, but rather sought specific performance of "the Contract," defined as "Commercial Contract – Improved Property," signed "on or about February 26, 2019." In the final judgment, the trial court ordered the Morenos to perform under the purchase agreement, which clearly requires LGAG, in turn, to pay the Morenos $830,000 cash at closing with $0 financing and no assumption. The purchase agreement also requires the Morenos to convey the property "with no liens, assessments, or Uniform Commercial Code or other security interests against" it. Therefore, the purchase agreement does not permit LGAG to assume the Morenos' note at closing in lieu of paying cash for the property, and nothing in the trial court's judgment requires the Morenos to acquiesce to that proposal.

Because we conclude the evidence is legally and factually sufficient to support the trial court's judgment, we overrule the Morenos' issues.

## Conclusion

Having overruled the Morenos' issues, we affirm the trial court's judgment.

Sandee Bryan Marion, Chief Justice